[Crim. No. 2969. Second Appellate District, Division Two.—April 16, 1937.]

THE PEOPLE, Respondent, v. AL TRIPPELL, Appellant.

Morris Lavine and Rex I. McCreery for Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

CRAIL, P. J.—This is an appeal from an order denying a motion after judgment to determine the sanity or insanity of defendant and to halt the punishment provided by the judgment until his sanity was restored. The motion was brought under section 1367 of the Penal Code, which reads: "A person cannot be tried, adjudged to punishment, or *punished* for a public offense, while he is insane."

As long ago as the year 1934 the defendant, a former deputy district attorney, was accused by information of the crime of violation of section 288 of the Penal Code. He entered a plea of not guilty, but never a plea of not guilty by reason of insanity. He was found guilty, April 17, 1935. He appealed from the judgment of conviction to the District Court of Appeal, which court affirmed the judgment. (*People* v. *Trippell*, (Cal. App.) [54 Pac. (2d) 763].) Thereafter, he succeeded in having the judgment reviewed by the Supreme Court, which court again affirmed it. (*People* v. *Trippell*, 7 Cal. (2d) 612 [61 Pac. (2d) 929].) Upon return of the *remittitur* and before the sheriff took him with the order of commitment to the state penitentiary he obtained a stay by the trial court while he prepared and presented a motion for probation. An additional stay was requested and granted. After the motion for probation was denied, and not before, the defendant made the instant motion. It was accompanied by the affidavit of a doctor in which he states: "In my opinion this man is in need of state hospital care as continued incarceration in jail is likely to aggravate his psychosis." Execution of the judgment was

again stayed until, on February 9, 1937, the motion came on for hearing. It was argued and denied. It is from this order the appeal is taken. The defendant would long since have been in the state penitentiary had not a stay been granted by this court until the termination of this appeal. All of said stays were made upon application of the defendant.

The defendant relies upon that part of section 1367 which we have italicized above, which runs to the effect that a person cannot be *punished* for a public offense while he is insane. It is the defendant's contention that the order was made by the trial court on the ground that after the conviction of the defendant the court lacked jurisdiction to make such an order.

The attorney-general contends that this section must be read in connection with section 1368, which reads in part, "If at any time during the pendency of an action up to and including the time when defendant is brought up for judgment on conviction a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to a jury; and the trial or the pronouncing of the judgment must be suspended until the question is determined by their verdict," and that said section definitely limits the trial court's jurisdiction to try the question of insanity to a time prior to the time when the defendant is brought up for judgment, and further that it must be read in connection with section 1587 of the Penal Code which reads: "When the warden, and such other officers as may be designated by the directors to act with him in such cases, shall be of opinion that any convict is insane, they shall make proper examination, and if they remain of the opinion that such person is insane, the warden shall certify the fact to the superintendent of one of the state asylums for the insane, and shall forthwith send such convict to said asylum for care and treatment." The attorney-general contends that the legislature has provided a well-rounded plan for the protection of insane persons or those who become insane in a criminal proceeding. As against this position the defendant contends that there is a hiatus between the time of sentence and the time when the defendant reaches the prison gate which is unprovided for under the law; that therefore we must look to the common law for guidance during this period and that by the common law, under the

circumstances related above, the defendant is entitled as a matter of right to a trial by jury as to his sanity or insanity. In this behalf he quotes Blackstone, Book 4, sections 24 and 25.

The question is a rare one and we go to a decision of the Supreme Court of the United States, decided in 1897, for a statement of the common law under such a situation. In the case of *Nobles* v. *State of Georgia*, 168 U. S. 398 [18 Sup. Ct. 87, 42 L. Ed. 515], the same question came before that court upon the contention of a defendant who had been convicted of murder that under somewhat similar circumstances he was entitled to a jury trial as a matter of right and that having been denied a trial by jury there was a failure of the trial court to observe "due process of law". After quoting at length the language of Blackstone relied upon by the defendant and after analyzing the same, the high court said: "In other words, by the common law, if, after conviction and sentence, a suggestion of insanity was made, not that the judge to whom it was made should, as a matter of right, proceed to summon a jury and have another trial, but that he should take such action as, in his discretion, he deemed best. . . . The plea at this stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place, or as a merciful dispensation. . . . If the right of trial by jury exist at all it must exist at all times, no matter how often the plea is repeated alleging insanity occurring since the last verdict. . . . There must be a sound discretion to be exercised by the court. If a case of real doubt arise, a just judge will not fail to relieve his own conscience by submitting the fact to a jury. . . . It being demonstrated by reason and authority that at common law a suggestion, made after verdict and sentence, of insanity did not give rise to an absolute right on the part of a convict to have such issue tried before the court and to a jury, but addressed itself to the discretion of the judge, it follows that the manner in which such question should be determined was purely a matter of legislative regulation. It was therefore a subject within the control of the state of Georgia." The court also demonstrated the obvious unsoundness of the defendant's contention by pointing to "the absurd conclusion" which would result from its establishment. It said: "If it were true that at common law a suggestion of insanity after sentence created on the part of a convict an

absolute right to a trial of this issue by a judge and jury, then (as a finding that insanity did not exist at one time would not be the thing adjudged as to its nonexistence at another) it would be wholly at the will of a convict to suffer [or not to suffer] any punishment whatever, for the necessity of his doing so would depend solely upon his fecundity in making suggestion after suggestion of insanity, to be followed by trial upon trial.''

It will be further observed that the order of the court was not a denial to the defendant of a trial by jury after *doubt* had arisen as to his sanity, but was merely a denial by the court that it had a doubt of the defendant's sanity. We are of the view that the court did not abuse its discretion in the matter. We have set forth above the numerous delays obtained by the defendant and the numerous times he came before the court. During these times the court may well have exercised its own powers of observation as to the defendant's sanity. All presumptions are in favor of the order. It is a fair presumption that the court denied the motion for the reason that no doubt as to the defendant's sanity had been created in its mind.

■ Finally, it must be remembered that the defendant is not being punished while he is incarcerated in the county jail. The only purpose in retaining defendant in the county jail at this time is to guard against his escape and to insure his custody for delivery to punishment. (*Ex parte Ahumada*, 93 Cal. App. 152 [269 Pac. 181].) Neither will the defendant be subject to punishment while he is being delivered to the state penitentiary. It is the fact of actual imprisonment which constitutes punishment. (*Ex parte Williams*, 87 Cal. 78 [24 Pac. 602, 25 Pac. 248].) ''The term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant at the place of imprisonment . . . '' (Pen. Code, sec. 670, *Ex parte McGuire*, 135 Cal. 339 [67 Pac. 327, 87 Am. St. Rep. 105].) Until that time section 1367 of the Penal Code will not have been violated. Immediately upon the delivery of the defendant within the prison gates authority vests in the warden and others under section 1587 to make proper examination to exercise the merciful dispensation of the People.

Order affirmed.

McComb, J., concurred.

WOOD, J., Concurring.—I concur in the judgment. In *Nobles* v. *State of Georgia,* 168 U. S. 398 [18 Sup. Ct. 87, 42 L. Ed. 515], petitioner had been sentenced to death. The Georgia code provided: "If, after any convict shall have been sentenced to the punishment of death, he shall become insane, the sheriff of the county, with concurrence and assistance of the ordinary thereof, shall summon a jury of twelve men to inquire into such insanity." In affirming the judgment the court said that the manner in which a suggestion of insanity should be determined was purely a matter of legislative regulation. The California legislature has provided the manner in which questions of alleged insanity are to be determined. Before sentence section 1368 of the Penal Code is applicable. After sentence the question of the mental condition of defendant is in my opinion to be determined in the manner provided by section 1587 of the Penal Code.