[Crim. No. 22242. Second Dist., Div. Five. Jan. 20, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
NELSON ANDERSON, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—Defendant was charged by information in counts 1 and 4 with assault with a deadly weapon with intent to commit murder (Pen. Code, § 217), and in counts 2, 3, and 5 with murder (Pen. Code, § 187). Defendant was found guilty of murder as charged in counts 3 and 5, and of assault with a deadly weapon with intent to commit murder as charged in count 4. He was acquitted of the charges contained in counts 1 and 2. Defendant was sentenced to death for the offense listed in count 3,[1] to state prison for the term prescribed by law for the offense listed in count 4, and for life imprisonment for the offense listed in count 5.

This court has reviewed the record in this case and the numerous legal issues posed by defendant which are offered as grounds for reversal. We find that there was more than sufficient evidence to sustain the guilty verdicts.

---

[1] We reduce the judgment insofar as it provides for the penalty of death, to that of life imprisonment, pursuant to the mandate of *People* v. *Anderson*, 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880].

The People's case was as follows: Defendant became involved in an altercation with one Freddie Franklin. A witness, Diane Blackburn, testified that prior to the victim Franklin's death, she observed defendant with a shotgun. Defendant stated that he was going to kill Franklin because he was "bugging" him. Some time later, the witness heard defendant, who was in another room, again say he was going to shoot the deceased. She ran into the room and observed Franklin standing beside defendant. Defendant had a knife in his hand. Defendant swung at Ms. Blackburn, and she felt the knife strike her. She lost consciousness (count 4). When she regained consciousness, she observed Franklin to be lying face down on a bed. He was dead by stab wounds (count 3).

The evidence tying defendant to the offense listed in count 5 was mostly circumstantial. Defendant was identified by several witnesses as being in the vicinity of the location where the victim, Marguerite Larson, lived. Defendant and several other males were knocking on doors in the neighborhood, purporting to solicit funds for a crippled children's foundation. The victim was found murdered in her apartment. A tie clip which was found sticking to the chest of the victim by a concentration of blood was identified as belonging to defendant. Ms. Blackburn testified that defendant had admitted killing a woman in Culver City because "he got caught stealing something." He stated he stabbed her approximately 20 times.[2]

The case for the defense was essentially an attempt to impeach the credibility of the prosecution's witnesses. By way of affirmative defense, defendant admitted stabbing Franklin, but stated that he did so in self-defense. The defense of diminished capacity was also proffered.[3]

1. ■ Did the deputy district attorney utilize his peremptory challenges so as to violate the equal protection clause of the Fourteenth Amendment?

Defendant does not contend, nor does the record indicate, that the People are systematically excluding a particular class of individuals, i.e., members of the Negro race, from participation in juries. Rather, defendant's specification of error is directed towards alleged systematic

---

[2]The decedent, Marguerite Larson, lived in Culver City and was the recipient of numerous stab wounds. Five parallel wounds to the victim's back were all fatal.

[3]Defendant had originally also pled not guilty by reason of insanity, but this defense was withdrawn.

exclusion from the particular jury that tried defendant.[4] Thus stated, the issue is resolved adversely to defendant's contention by the case of *Swain v. Alabama*, 380 U.S. 202, 221-222 [13 L.Ed.2d 759, 773-774, 85 S.Ct. 824], wherein the court stated: ". . . .[W]e cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto,* would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it."

2. ■ Did the deputy district attorney commit misconduct during *voir dire* of the jury?

On several occasions, prospective jurors were asked by the deputy district attorney questions relative to the juror's attitudes toward Black Muslims. There was no error in this under the facts of this case. Both sides in a jury trial are entitled to have the credibility of witnesses judged by relevant standards. The argument is advanced by defendant that it is prejudicial to allow questions to jurors as to racial or religious prejudices. We think it would be far more injurious to permit persons entertaining a

---

[4]Seven of the ten peremptories exercised by the People were directed towards Negroes. There were, however, three Negroes who were members of the jury that convicted defendant.

disqualifying prejudice to serve as jurors because inquiries designed to elicit the fact of disqualification were barred. In the instant case, there was evidence that defendant maintained links with the Black Muslim movement. We cannot say that the deputy district attorney was not entitled to proceed along a reasonable line of inquiry to assure the selection of a jury that was fair and unbiased. He was within reasonable bounds in directing questions to prospective jurors which attempted to bring out any latent bias.[5] (See, Witkin, Cal. Criminal Procedure, § 411, p. 410.) We perceive nothing in the deputy's questioning which exceeded reasonable bounds. (See *People* v. *Crowe,* 8 Cal.3d 815, 829-830 [106 Cal.Rptr. 369, 506 P.2d 193].)

3. ■ Did the trial court improperly deny defense counsel an opportunity to renew a Penal Code section 1538.5 motion during trial?

A section 1538.5 motion which is not made at a superior court pretrial suppression hearing generally cannot be made during trial.[6] However, a new motion to suppress based upon grounds either unavailable or unknown to defendant at the time the motion should have been made can be made at or during trial. (Pen. Code, § 1538.5, subd. (h).) "Thus, for example, if there occurred an intervening change in the applicable law or the discovery of new evidence in support of suppression, the trial court could entertain a new motion based upon such grounds." (*People* v. *Superior Court (Edmonds),* 4 Cal.3d 605, 611 [94 Cal.Rptr. 250, 483 P.2d 1202].) In the instant case, there was no showing at trial nor has there been a showing on appeal, that grounds for making a section 1538.5 motion during trial were existent. The contention is without merit.

4. ■ Must the sentences under counts 3, 4, and 5 be deemed to run concurrently with each other?

Penal Code section 669 provides that "if the punishment for [any crime] is expressly prescribed to be life imprisonment . . . then the terms

---

[5]There was evidence that the offenses listed in counts 1 and 2 were based upon defendant's dislike of members of the white race. To the extent that Black Muslims as a group or individually harbor similar views, the district attorney was entitled to interpose questions to elicit such information. Defense counsel asked a number of prospective jurors whether they were members of religious organizations which "hold as one of their tenets the basic belief that the people of the Negro race may be inferior." Clearly, the People were entitled to propound questions to ascertain whether any of the prospective jurors harbored a converse conviction as to members of the white race.

[6]A section 1538.5 motion was made at defendant's preliminary hearing.

of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term." In the instant case defendant has received a life sentence under counts 3 and 5. Under the statutory mandate, the sentence under each count must run concurrently with the other.

5. ■ Should defendant's sentence be deemed to have begun as of the date of his arrest?

Prior to 1972, the rule in California was that presentence jail time was not required to be credited to the sentence eventually imposed upon a convicted defendant. (*People* v. *Rose,* 41 Cal.App.2d 445, 446 [106 P.2d 930]; *People* v. *Trippell,* 20 Cal.App.2d 386, 390 [67 P.2d 111].) In 1971, the Legislature changed this rule by enacting Penal Code section 2900.5,[7] which was made expressly applicable only to those persons who were delivered into the custody of the Director of Corrections on or after the effective date of the section.[8] Defendant contends that we must ignore this legislative mandate and hold that the statute must be effective retroactively.[9] Since section 2900.5 is expressly effective only prospectively, any possibility that it must be applied retroactively must be posited on the assumption that presentence jail time is constitutionally required to be credited against the sentence actually imposed. (See, *People* v. *Francis,* 71 Cal.2d 66, 75-76 [75 Cal.Rptr. 199, 450 P.2d 591]; *In re Estrada,* 63 Cal.2d 740, 750 [48 Cal.Rptr. 172, 408 P.2d 948].)

This question has been answered by *In re Kapperman,* 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657], wherein the court holds that the defendant is to be credited with the presentence time served as the statute is to be applied retroactively.

[7]Penal Code section 2900.5, subdivision (a) provides: "In all felony convictions, either by plea or by verdict, when the defendant has been in custody in any city, county, or city and county jail, all days of custody of the defendant from the date of arrest to the date on which the serving of the sentence imposed commences, including days served as a condition of probation in compliance with a court order, shall be credited upon his sentence, or credited to any fine which may be imposed, at the rate of not less than twenty dollars . . . per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the sentence to be imposed, the entire sentence shall be deemed to have been served. In any case where the court has imposed both a prison sentence and a fine, any days to be credited to the defendant shall first be applied to the sentence imposed, and thereafter such remaining days, if any, shall be applied to the fine."

[8]The effective date of the legislation was March 4, 1972.

[9]Defendant was sentenced on December 17, 1971. The date he was delivered into the custody of the Director of Corrections does not appear in the record on appeal. It is, however, not denied that defendant has not been credited with his presentence jail time.

The length of presentence confinement served by defendant is not set forth. Thus, upon remand, it will be necessary for the superior court to ascertain that time and issue an appropriate order to the Adult Authority to credit defendant with the presentence confinement served.

The judgment, as modified, is affirmed. The cause is remanded to the superior court for correction of the record in accordance with the views herein expressed.

Kaus, P. J., and Hastings, J., concurred.