[Crim. No. 19519. Feb. 13, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
EUGENE ALLEN and ERNEST GRAHAM,
Defendants and Appellants.

**COUNSEL**

Robert D. Carrow and John F. Cruikshank, Jr., under appointments by the Supreme Court, Robert Y. Bell, James Larson, Doron Weinberg and Larson & Weinberg for Defendants and Appellants.

Paul N. Halvonik, State Public Defender, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon, Deputy State Public Defender, Jerome B. Falk, Jr., Anthony G. Amsterdam, Jack Greenberg, James M. Nabrit III, Peggy C. Davis, Linda S. Greene, David Evan Kendall, Lowell Johnston, Charles C. Marson, Margaret C. Crosby, Alan L. Schlosser, Robert Nicco, Public Defender (San Francisco), Sheldon Portman, Public Defender (Santa Clara), Kenneth M. Wells, Public Defender (Sacràmento), Ephraim Margolin and Dennis P. Riordan, Deputy State Public Defender, as Amici Curiae on behalf of Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon, Robert R. Granucci, William D. Stein and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—In March 1976, defendants Eugene Allen and Ernest E. Graham were convicted of violating Penal Code section 4500, aggravated assault by a life prisoner. At the time the offense was committed, section 4500 prescribed the death penalty as the automatic, mandatory punishment whenever, as in this case, the assault was directed against a nonprisoner and resulted in the victim's death within a year and a day. Accordingly, the trial court sentenced both defendants to death. The case is now before this court pursuant to the statutorily prescribed automatic appeal. (Cal. Const., art. VI, § 11; Pen. Code, § 1239, subd. (b).)

On appeal, defendants attack their convictions on numerous grounds. In view of this court's recent decision in *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], however, we find it necessary to address only defendants' principal challenge to the verdict of guilt, an attack focusing upon the prosecutorial use of peremptory challenges to exclude all potential jurors who were black from the petit jury. In *Wheeler,* we concluded that under the California Constitution the prosecution may not exercise its peremptory challenges on the basis of "group bias" to exclude potential jurors from a jury in a criminal case; pursuant to that conclusion, we held that when a defendant makes a prima facie showing that the prosecution has used its peremptory challenges in such a manner in a particular case, the burden shifts to the prosecution to demonstrate that the peremptory challenges in question

have not been based on group bias but rather rest on independent, legitimate grounds.

As we shall explain, under the guidelines articulated in *Wheeler* defendants in the instant case clearly established a prima facie case that the prosecution was exercising its peremptory challenges in an unconstitutional fashion. Inasmuch as the record contains no justification for the prosecution's challenged course of conduct, our *Wheeler* decision establishes that the trial court erred in rejecting defendants' objections to the jury selection process and in permitting the case to be tried by a jury from which black prospective jurors had been unconstitutionally excluded. Accordingly, we conclude that the judgments must be reversed.

1. *The facts and proceedings below.*

On November 27, 1973, a state correctional officer was assaulted and stabbed numerous times while on duty in Deuel Vocational Institute, a state prison facility; the officer died the same day as a result of the injuries sustained in the attack. On December 5, 1973, the San Joaquin County Grand Jury returned a two-count indictment against defendants as a result of the incident; the indictment charged both with violation of Penal Code section 187 (murder) and section 4500 (aggravated assault by a life prisoner).

On October 7, 1972, just prior to the first trial in this matter, the superior court dismissed the murder charge against each defendant upon motion of the district attorney; as a consequence, the two defendants went to trial solely on the section 4500 charges. The jury in the initial trial could not agree on a verdict and a mistrial was declared. Thereafter, defendants' motion for change of venue was granted and the case was transferred to the San Francisco Superior Court.

On March 10, 1976, selection of the jury for the second trial began. The record reflects without contradiction that over the course of the jury selection process, the prosecution continually utilized its peremptory challenges to remove black jurors who had been passed for cause. From the outset of the jury voir dire, counsel for both defendants objected to the district attorney's peremptory challenge of black jurors, pointing out that the need for a truly representative jury was particularly great in this case because both defendants are black, the victim of assault was a white prison guard and the majority of the prosecution witnesses, as revealed by the first trial, were white. After a brief argument of the point in chambers, the trial court overruled defense counsel's initial objection.

As the jury selection process progressed and the district attorney continued to exercise his peremptory challenges against each black prospective juror who was seated in the jury box, defense counsel reiterated their objections and noted that the prosecutor was excluding both black jurors to whom he had addressed hardly any questions[1] and also black jurors to whom he had addressed questions and whose answers revealed backgrounds and family contacts that were similar to white jurors with whom the prosecution was satisfied.[2] Defense counsel asserted that the entire pattern of the prosecutor's actions left no doubt that the basis for the district attorney's use of his peremptory challenges was simply the race of the potential juror.

In response, the district attorney made no attempt to justify his use of the peremptory challenge or to proffer an alternative explanation to that suggested by defense counsel. Rather, the district attorney took the position that because defense counsel had not demonstrated that the district attorney's office had routinely utilized peremptory challenges to exclude blacks from juries over a substantial period of time, the defendants had not made out a prima facie case of unconstitutional action and no explanation was necessary. The trial court accepted the district attorney's argument and overruled defendants' objections to the jury selection procedure.

By the conclusion of the jury selection process, the prosecutor had utilized peremptory challenges to remove all 11 black prospective jurors who had been tentatively seated on defendants' petit jury. In addition, the prosecutor, again through the use of his peremptory challenges, had dismissed the three black individuals who had tentatively been seated as alternate jurors. As a consequence, although the venire from which the jury was selected included a broad cross-section of racial and ethnic groups, none of the 12 jurors or the 4 alternate jurors who were ultimately selected to decide defendants' guilt or innocence were black.

[1]The record reflects that in the case of a majority of the black jurors excluded by the prosecutor by peremptory challenge, the prosecutor simply asked the prospective jurors whether their answers to other questions would differ from those given by previous jurors and whether they could be fair. In each case, the black prospective juror answered that his answers would not differ from other jurors who had been passed for cause, and that he could be fair; each such black prospective juror was nonetheless excluded by the prosecution by peremptory challenge without further questioning.

[2]The voir dire reflects that at least five of the black prospective jurors had backgrounds which suggested that, had they been white, the prosecution would not have peremptorily excused them. Thus, one of the excluded jurors was the wife of a special patrolman for the San Francisco Police Department; another had a father, brother-in-law, uncle and cousin in law enforcement; a third was the wife of a security guard; a fourth, the brother of a deputy sheriff; and a fifth had a friend who was a deputy sheriff.

On March 31, 1976, the jury returned a verdict finding both defendants guilty of violating Penal Code section 4500. On April 2, 1976, pursuant to the mandatory provisions of section 4500, the trial court sentenced each of the defendants to death. On appeal, defendants challenge both their convictions and their death sentences.

2. *Defendants' convictions must be reversed in light of People v. Wheeler (1978) 22 Cal.3d 258.*

As noted above, although defendants claim that their convictions are fatally flawed in a substantial number of respects, in view of this court's recent decision in *People* v. *Wheeler, supra,* 22 Cal.3d 258 we need only address defendants' principal claim of error, arising from the district attorney's use of peremptory challenges to exclude all blacks from the jury. As we explain, under the circumstances of this case our holding in *Wheeler* clearly dictates a reversal of the convictions.

In *Wheeler,* as in the instant matter, defendants in a criminal case maintained that the district attorney had violated defendants' constitutional right to a fair trial by jury by the district attorney's use of peremptory challenges to exclude all qualified blacks from the jury solely on the basis of their race. ■ Grounding our decision on the relevant provision of our state Constitution, we sustained the defendants' claim, holding "that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution." (22 Cal.3d at pp. 276-277.)

Prior to our *Wheeler* decision, of course, it had long been clear that the federal Constitution prohibits a state from excluding individuals from a jury on the basis of their race. (See, e.g., *Strauder* v. *West Virginia* (1879) 100 U.S. 303 [25 L.Ed. 664]; *Smith* v. *Texas* (1940) 311 U.S. 128 [85 L.Ed. 84, 61 S.Ct. 164].) *Wheeler* established that under the California Constitution such racial exclusion is no less offensive when it is accomplished under the rubric of a peremptory challenge.

In addition to establishing this fundamental constitutional principle, our *Wheeler* opinion went on to explain how, in practical terms, this constitutional principle is to be implemented. ■ We recognized "that in any given instance the presumption must be that a party exercising a peremptory challenge is doing so on a constitutionally permissible ground." (22 Cal.3d at p. 278.) We stressed, however, that "if the foregoing constitutional right [to a jury from which jurors have not been

excluded because of group bias] is not to be nullified" (*id.*), such a presumption must not be rendered realistically incapable of rebuttal. Rather it must be treated as a presumption which a defendant can, as a practical matter, overcome in a given case by reference to the circumstances of the particular jury selection process.

Declining to adopt a standard under which the determination of whether or not a defendant has made out a prima facie case of unconstitutional conduct is wholly dependent upon the application of statistical decision theory (*id.*, at pp. 278-280), we concluded that in this setting it is preferable to "rely on more traditional procedures" (*id.*, at p. 280) in assessing the strength of the defendant's showing.

■ We described the contemplated procedure in some detail: "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, as in the case at bar, he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.

■ "We shall not attempt a compendium of all the ways in which a party may seek to make such a showing. For illustration, however, we mention certain types of evidence that will be relevant for this purpose. Thus the party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole. Next, the showing may be supplemented when appropriate by such circumstances as the failure of his opponent to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all. Lastly, under *Peters* [v. *Kiff* (1972) 407 U.S. 493 (33 L.Ed.2d 83, 92 S.Ct. 2163)] and *Taylor* [v. *Louisiana* (1975) 419 U.S. 522 (42 L.Ed.2d 690, 95 S.Ct. 692)] the defendant need not be a member of the excluded group in order to complain of a violation of the representative cross-section rule; yet if he is, and especially if in addition his alleged victim is a member of

the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention.

■ "Upon presentation of this and similar evidence—in the absence, of course, of the jury—the court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone. . . . [¶] If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone. . . ." (Fns. omitted.) (*Id.,* at pp. 280-281.)

■ Under the guidelines established in *Wheeler,*[3] there can be no doubt but that the present defendants made out a prima facie case that the prosecution was exercising its peremptory challenges against black persons solely on the ground of group bias. As we have seen, defendants demonstrated at trial (1) that the district attorney utilized his peremptory challenge to remove every black individual, 14 in all, who was tentatively seated as either a regular or alternate juror; (2) that the excluded black jurors included both women and men, and specifically included a number of individuals whose background indicated that, absent their race, they would in all probability have been considered desirable jurors by the prosecutor; (3) that the district attorney had excluded many black persons after engaging in no more than "desultory voir dire"; and (4) finally, that, as in *Wheeler,* the defendants belonged to the group whose members the district attorney had excluded whereas "the alleged victim [was] a member of the group to which [all] of the remaining jurors belong." (*Id.,* at p. 281.)

■ Despite this prima facie showing by defendants, the prosecutor came forward with no evidence or explanation to demonstrate that he had exercised the challenged peremptories on grounds that were "reasonably relevant to the particular case on trial or its parties or witnesses." (*Id.,* at p. 282.) Instead, he took the position that no rebuttal was necessary. Under similar circumstances in *Wheeler* we held that "[t]he trial court . . . erred in ruling that the prosecutor was not required to respond to the allegation, and in denying defendants' motions without a rebuttal showing by the prosecutor that the challenges were each predicated on grounds of specific bias. [¶] The error is prejudicial per se. . . ." (Fn. omitted.) (*Id.,* at p. 283.)

---

[3]The *Wheeler* decision itself explicitly established that the rule adopted in that case applies to all cases, such as the instant matter, in which the defendants are under a sentence of death. (See 22 Cal.3d at p. 283, fn. 31.)

Accordingly, under the clear dictates of *Wheeler,* we conclude that defendants' convictions must be reversed and the cause remanded for a new trial.[4]

The judgments are reversed.

Bird, C. J., Mosk, J., Manuel, J., and Newman, J., concurred.

**RICHARDSON, J.**—I concur in the judgment solely under the compulsion of the rule announced by the present majority in *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. As indicated in my dissent in that case *(id.,* p. 288), *Wheeler,* in my view, was wrongly decided. Peremptory challenges may be exercised by counsel on either side without justification, excuse, or explanation to anyone.

Clark, J., concurred.

Respondent's petition for a rehearing was denied March 29, 1979.

---

[4]Although the People suggested at oral argument that the case should be remanded to the trial court to provide the prosecution with an additional opportunity to justify its use of peremptory challenges to exclude all the black jurors from the petit jury, under identical circumstances in *Wheeler* our court simply reversed the conviction and directed a new trial. (See *id.,* at p. 283 & fn. 30.) We believe the disposition directed in *Wheeler* is appropriate in light of the infeasibility of accurately probing and assessing the prosecutor's prior motivation at this late date.