[Civ. No. 50418. First Dist., Div. One. June 3, 1983.]

LAWRENCE HOLLEY, Plaintiff and Appellant, v.
J & S SWEEPING COMPANY et al., Defendants and Respondents.

COUNSEL

Dorsey Redland and Van H. Pinney for Plaintiff and Appellant.

St. Clair, Zappettini, McFetridge & Griffin, Bryan A. Marmesh and Cyril Viadro for Defendants and Respondents.

OPINION

RACANELLI, P. J.—On appeal from a civil judgment we confront the apparently novel question whether the exercise of peremptory challenges in civil proceedings is subject to scrutiny under the constitutional standard announced in *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. We will conclude for the reasons stated that substantially similar constitutional concerns warrant compliance with the *Wheeler* mandate. Since the record clearly demonstrates noncompliance, we reverse the judgment.

The relevant facts and proceedings below are undisputed: appellant, who is black, brought a negligence action against respondents. Trial by an all white jury resulted in a special verdict by a nine-to-three vote (Cal. Const., art. I, § 16; Code Civ. Proc. § 618)[1] in favor of respondents on the issue of liability. During jury voir dire respondents exercised three of their six peremptory challenges (see Code Civ. Proc., § 601) to excuse three of four black jurors called to the jury box.[2] (Mrs. Smith, the fourth black panel member, was dismissed by the court for cause; Code Civ. Proc., § 602.) After the third peremptory challenge, appellant moved that the trial court summon additional black veniremen in an effort to prevent the attempted systematic exclusion of a class of prospective jurors based solely on the grounds of race. Following argument the trial court found that there was no "exclusion by race." Once the jury had been sworn, appellant renewed his request for additional jurors reflecting a demographic composition of the community[3] joined with a motion for mistrial based upon a denial of his constitutional right to trial by jury due to the racially motivated juror challenges. Appellant submitted supporting information from a jury service indicating that two of the dismissed black jurors (Thelma Serrell and Georgia Johnson) had previously served on local civil trial juries in which they voted in favor of the defense. In resisting the motions, respondents offered no explanation or claim of specific bias arguing instead that peremptory challenges could be made for any reason and without

[1]California Constitution, article I, section 16 provides in pertinent part: "Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict."

[2]Peggy Gash, the first black person called into the box, was briefly examined by the court and appellant but not by respondents. Thelma Serrell who was subsequently called into the box, was questioned only by appellant. Georgia Johnson was called to replace a previously excused juror and was examined by the court alone. Respondents exercised their first three peremptory challenges in the following sequence: Serrell, Johnson and Gash.

[3]Appellant argued, without supporting evidence or statistical data, that blacks constituted an approximate 25 percent cross-section of the community.

any obligation to explain the reason underlying such use. Thereafter, both motions were denied.

### I

In a case of first impression the Supreme Court in *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] [a robbery-murder prosecution] examined the central question whether the exercise of the statutory right of peremptory challenge of prospective jurors in a criminal action which reflected group bias constituted a denial of defendant's right to trial by an impartial jury as guaranteed under the provisions of California Constitution, article I, section 16.

Following an extensive review of relevant state and federal decisions, the *Wheeler* court clearly determined that "in this state the right to trial by a jury drawn from a representative cross-section of the community is guaranteed equally and independently by the Sixth Amendment to the federal Constitution and by article I, section 16 of the California Constitution." (*Id.,* 22 Cal.3d at p. 272.) After examining the three critical stages of the jury selection process impacting that primary constitutional objective, the court first explained the fundamental differences between challenges for cause and peremptory challenges (Pen. Code, §§ 1073, 1069; cf. Code Civ. Proc., §§ 602, 601), reasoning that the latter type of challenge could not be based solely upon a "group bias" predicated upon jurors' inclusion in an identifiable group distinguished on racial, religious, ethnic or similar grounds. (*Id.,* pp. 272-276.) Use of peremptory challenges based solely on the ground of group bias, the court concluded, "violates the right to trial by jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution." (*Id.,* pp. 276-277.)

In order to overcome the presumption that the use of peremptory challenges was constitutionally permissible, the court fashioned a three-step procedural inquiry: "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First, as in the case at bar, he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*Id.,* at p. 280.)[4]

---

[4]By way of illustration, the court stated that the required showing could include evidence (1) of disproportionate use directed at jurors of an identified group; (2) that only the single common characteristic of group membership is demonstrated; and (3) that the jurors so challenged were subjected to desultory voir dire or no examination at all by the challenging party.

Once a prima facie showing is made, the burden shifts to the other party to show that the challenges were not made on the basis of group bias alone. (*Id.*, at p. 281.) "[T]he allegedly offending party must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses—i.e., for reasons of specific bias as defined herein." (*Id.*, at p. 282.) If the burden of justification is not sustained, the court "must dismiss the jurors thus far selected . . . quash any remaining venire, . . . [summon] a different venire . . . and the jury selection process may begin anew." (*Ibid.*)

Finally, the denial of such motion in the absence of a rebuttal showing that the peremptory challenges were based on grounds of specific bias constitutes prejudicial error per se. (*Id.*, at p. 283.)

## II

We now consider whether the procedural remedy established in *Wheeler* applies in civil proceedings, a question that court expressly reserved for future determination (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282, fn. 29). We are persuaded that substantially similar constitutional concerns compel a uniform application to civil jury trials. (U.S. Const., 7th Amend.; Cal. Const., art. I, § 16.)

Although we recognize that different interests are at stake, and differing standards of proof and adjudication apply, juries in both types of proceedings perform the same important function of ultimate fact finders under the same state constitutional guarantee. Since the dominant purpose underscored in *Wheeler* is "to achieve an overall impartiality by allowing the interaction of diverse beliefs and values the jurors bring from their group experiences" (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 276), a failure to permit similar judicial supervision in a civil setting would not only frustrate such a fundamental purpose but would conceivably sanction the indiscriminate use of peremptory challenges based upon group bias alone thus seriously eroding the constitutional guarantee extended equally to civil litigants.

In the early case of *Thiel* v. *Southern Pacific Co.* (1946) 328 U.S. 217 [90 L.Ed. 1181, 66 S.Ct. 984, 166 A.L.R. 1412] [reversing a civil jury verdict due to systematic exclusion of daily wage earners from the jury list], the court implicitly rejected any conceptual distinction in the jury selection process stating: "The American tradition of trial by jury, considered in connection with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community. [Citations.]" (P. 220, 90 L.Ed. 1184].) Although the *Wheeler* court did not reach the related constitutional inquiry, it openly indorsed the views expressed in *Thiel* and other federal decisions em-

phasizing the importance of the representative cross-sectional rule in order to protect the constitutional right to an impartial jury. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 270.) In the light of the court's penetrating analysis, we interpret that express endorsement to mean that the systematic exclusion of jurors at any stage of the selection process in either criminal or civil proceedings solely on the basis of group bias is constitutionally impermissible. That overriding consideration is now codified as a matter of statewide policy in order to promote random jury selection "from a fair cross-section of the population of the area served by the court" (Code Civ. Proc., § 197) and to prevent an exclusion from jury service "on account of race, color, religion, sex, national origin, or economic status." (Code Civ. Proc., § 197.1.)[5] Accordingly, we hold that the procedural safeguard created in *Wheeler* applies herein. (See *People* v. *Wheeler, supra,* 22 Cal.3d at p. 283, fn. 31.)[6]

## III

Since it is undisputed that appellant objected in a timely fashion to the exclusion of the three black jurors as being racially motivated, and that such jurors are members of a cognizable group within the cross-sectional rule (*Id.,* 22 Cal.3d at p. 280, fn. 26), we focus our attention upon the third prong: the existence of a prima facie case establishing probable group bias thus shifting the burden of justification to respondents. We think the required showing is amply demonstrated.

Of the four black jurors called into the box, respondents peremptorily excused three without any preliminary voir dire questioning. (As earlier noted, the fourth juror was excused by the court for cause.) In contrast, respondents exercised two of their remaining challenges against white jurors only after an extended voir dire examination; their final challenge removed another white juror following denial of a challenge for cause. (See *People* v. *Wheeler, supra,* at p. 275, fn. 16.) Under such circumstances, a reasonable inference may be drawn that the sole basis for the suspect challenges was the common racial background of the three jurors. Whether race was, in fact, the exclusive basis need not be proved; *the objecting party need only make a prima facie showing,* as here, that the peremptory challenges against black jurors were most likely

[5]Added by 1980 Statutes, chapter 81, sections 7-8, as part of a comprehensive and uniform procedure for the selection of trial jurors. (See 12 Pacific L.J. (1980) 295-298.)

[6]Although the voir dire proceedings herein were conducted shortly after *Wheeler* became final, we cannot fault the able trial judge in failing to foresee its civil application; indeed, it would have required an extraordinary degree of prescience to have forecast a salutary rule change which had long withstood related constitutional challenges. (See e.g., *Swain* v. *Alabama* (1965) 380 U.S. 202 [13 L.Ed.2d 759, 85 S.Ct. 824]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 727-728 [83 Cal.Rptr. 608, 464 P.2d 64], cert. den. 406 U.S. 972] 32 L.Ed.2d 672, 92 S.Ct. 2418], overruled in *People* v. *Wheeler, supra,* 22 Cal.3d at p. 287, fn. 36; *People* v. *Wiley* (1976) 57 Cal.App.3d 149, 166 [129 Cal.Rptr. 13]; *People* v. *Allums* (1975) 47 Cal.App.3d 654, 663-664 [121 Cal.Rptr. 62]; *People* v. *Anderson* (1975) 44 Cal.App.3d 723, 726-727 [118 Cal.Rptr. 918], all disapproved in *People* v. *Wheeler, supra.*)

motivated by group bias alone. Under the dictates of *Wheeler,* the burden shifted to respondents to make a satisfactory rebuttal reasonably probative of the actual existence of a specific bias underlying the challenges. Yet, despite appellant's renewed objections the trial court found no evidence of systematic exclusion based upon race and imposed no requirement upon respondents to explain the basis for the challenges. Indeed, the only response given was that no explanation was required.

We conclude, as in *Wheeler* and its progeny, that the trial court's failure to require a satisfactory explanation from respondents and its summary denial of the motion for mistrial without such a rebuttal showing constituted reversible error per se. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 283; accord *People* v. *Allen* (1979) 23 Cal.3d 286, 295, fn. 4 [152 Cal.Rptr. 454, 590 P.2d 30]; *People* v. *Johnson* (1978) 22 Cal.3d 296, 300 [148 Cal.Rptr. 915, 583 P.2d 774]; *People* v. *Fuller* (1982) 136 Cal.App.3d 403, 423 [186 Cal.Rptr. 283].)

IV

We discuss briefly appellant's remaining claim of *Beagle* error (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) in order to provide some guidance upon retrial. The parties assume (as do we arguendo) that the relevant prophylactic rules governing use of prior felony convictions for purposes of impeachment equally apply in civil proceedings.[7] ▮ Appellant's contention centers chiefly upon the question of remoteness of his 13-year-old prior felony conviction for the crime of receiving stolen property, conduct consistently held to be probative of a witness's veracity. (See e.g., *People* v. *McFarland* (1980) 108 Cal.App.3d 211, 215 [166 Cal.Rptr. 429]; *People* v. *Harris* (1980) 105 Cal.App.3d 204, 218-219 [164 Cal.Rptr. 296].) Relying on *People* v. *Burdine* (1979) 99 Cal.App.3d 442 [160 Cal.Rptr. 375] [15-year-old robbery excluded on basis of remoteness and similarity]. Appellant contends the 1966 conviction should have been excluded as being too remote.[8] We disagree.

Although the factor of remoteness is an important part of the balancing process in assessing the probative value of a prior felony conviction (*People* v. *Antick* (1975) 15 Cal.3d 79, 98-99 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Beagle, supra,* at p. 453), nonetheless it is only one factor to be considered in the exercise of the court's discretion. (*People* v. *Benton* (1979) 100 Cal.App.3d 92, 97 [161 Cal.Rptr. 12].) Concededly, the degree of remoteness of the prior

---

[7]The assumption appears somewhat doubtful in light of the unrelated factors involved in a criminal prosecution (see *People* v. *Beagle, supra,* at p. 453, outlining four major considerations including 1) substantially similar criminal conduct and 2) the potential coercive effect where the witnesses' liberty is at stake. (Cf. *People* v. *Barrick* (1982) 33 Cal.3d 115, 129 [187 Cal.Rptr. 716, 654 1243].)

[8]Three other felony convictions were ruled inadmissible.

conviction is inversely proportional to its probative value. (*People* v. *Duran* (1983) 140 Cal.App.3d 485, 498 [189 Cal.Rptr. 595].) But in the final analysis, the reasonable exercise of an informed discretion may not be disturbed on appeal. (*People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *McFarland, supra,* 108 Cal.App.3d 211, 216.) The record before us fails to demonstrate a palpable abuse of discretion in permitting use of the challenged felony conviction for purpose of impeachment.

Judgment reversed.

**NEWSOM, J.**—▮ ▮ I concur in the majority opinion in all respects save one.

In the majority's view it is a reasonable inference that the sole basis for exclusion was the invidious one of racial bias. This well may be correct, but particularly in view of the trial judge's finding to the contrary (which I quite agree is not dispositive), in these circumstances I would restrict the basis of our conclusion of error to the absence of the hearing required by *Wheeler*.

**HOLMDAHL, J.**—▮ ▮ I concur in the lead opinion for the reasons set forth in the concurring opinion of Justice Newsom. My concurrence is also with "reluctance" in substituting our judgment for that of the trial court and in recognition of the apparent mandate represented by *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. And, as with Justice Newsom, I restrict my concurrence to the "limited circumstances" of this case.

My reluctance in extending the *Wheeler* concept to civil cases is also based on concerns about the myriad of very practical and very difficult problems illustrated by the in-chambers discussions between the trial court and the attorneys in the case before us as to group identification of all prospective and all impaneled jurors as well as by the difficulties inherent in determining varying proportions of persons of various "identifiable groups" within counties and within judicial districts in counties.

I fully support the established principles concerning what is necessary for a fair trial, criminal or civil, including the general need and desirability that trial juries be drawn from representative cross-sections of the communities in which they serve.

The basic premise of *Wheeler* is idealistic and commendable. As applied to its facts and to the facts of the case before us, it is appropriate. Inevitably, however, its application from case to case will take the courts into the quagmire of quotas for groups that are difficult to define and even more difficult to

quantify in the courtroom.[1] The pursuit of judicial perfection will require both trial and appellate courts to provide speculative and impractical answers to artificial questions.

My concurrence is, therefore, limited to the narrow facts of the case before us.

A petition for a rehearing was denied July 1, 1983. On June 22 and July 1, 1983, the opinion was modified to read as printed above. Holmdahl, J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied, July 27, 1983. Richardson, J., was of the opinion that the petition should be granted.

---

[1]An omen of the future is appellant's argument that he was entitled to a jury panel reflecting the demographic composition of the community, which he claimed included an approximately 25 percent black population.