No. 82–1381.   MCCRAY *v.* NEW YORK.   Ct. App. N. Y.;
No. 82–5840.   MILLER *v.* ILLINOIS.   App. Ct. Ill., 1st Dist.; and
No. 82–5910.   PERRY *v.* LOUISIANA.   Sup. Ct. La.   Certiorari denied.   Reported below: No. 82–1381, 57 N. Y. 2d 542, 443 N. E. 2d 915; No. 82–5840, 104 Ill. App. 3d 1205, 437 N. E. 2d 945; No. 82–5910, 420 So. 2d 139.

Opinion of JUSTICE STEVENS, with whom JUSTICE BLACKMUN and JUSTICE POWELL join, respecting the denial of the petitions for writs of certiorari.

My vote to deny certiorari in these cases does not reflect disagreement with JUSTICE MARSHALL's appraisal of the importance of the underlying issue—whether the Constitution prohibits the use of peremptory challenges to exclude members of a particular group from the jury, based on the pros-

ecutor's assumption that they will be biased in favor of other members of the same group. I believe that further consideration of the substantive and procedural ramifications of the problem by other courts will enable us to deal with the issue more wisely at a later date. There is presently no conflict of decision within the federal system. During the past five years, two State Supreme Courts have held that a criminal defendant's rights under state constitutional provisions are violated in some circumstances by the prosecutor's use of peremptory challenges to exclude members of particular racial, ethnic, religious, or other groups from the jury. *People* v. *Wheeler*, 22 Cal. 3d 258, 583 P. 2d 748 (1978); *Commonwealth* v. *Soares*, 377 Mass. 461, 387 N. E. 2d 499, cert. denied, 444 U. S. 881 (1979).* That premise, understandably, has given rise to litigation addressing both procedural and substantive problems associated with judicial review of peremptory challenges, which had traditionally been final and unreviewable. See, *e. g.*, *People* v. *Allen*, 23 Cal. 3d 286, 292, 590 P. 2d 30, 33 (1979); *People* v. *Fuller*, 136 Cal. App. 3d

---

*Although these cases present only the question of peremptory challenges on racial grounds, the same constitutional claims may also apply to the exclusion of other identifiable groups. The California Supreme Court has held that the State may not use peremptory challenges solely on the basis of religious, ethnic, or similar group affiliations. See *People* v. *Wheeler*, 22 Cal. 3d, at 272, 583 P. 2d, at 758 (relying on both the Sixth Amendment to the United States Constitution and Art. I, § 16, of the California Constitution). Similarly, the Massachusetts Supreme Judicial Court has condemned peremptory challenges based on "sex, race, color, creed or national origin." *Commonwealth* v. *Soares*, 377 Mass., at 487–489, and nn. 29, 33, 387 N. E. 2d, at 515–516, and nn. 29, 33 (relying on Art. 12 of the Massachusetts Declaration of Rights). Cf. *State* v. *Crespin*, 94 N. M. 486, 612 P. 2d 716 (App. 1980) (declaring constitutional right, apparently on state grounds, but not specifying whether groups other than racial groups are protected).

Furthermore, although these cases involve peremptory challenges by the prosecutor, the Massachusetts court in *Soares* held that the Commonwealth as well as the defense could challenge the improper exercise of such challenges. 377 Mass., at 489–490, n. 35, 387 N. E. 2d, at 517, n. 35; see *Commonwealth* v. *Reid*, 384 Mass. 247, 424 N. E. 2d 495 (1981).

403, 186 Cal. Rptr. 283 (1982); *People v. Rousseau*, 129 Cal. App. 3d 526, 536, 179 Cal. Rptr. 892, 897 (1982); *Commonwealth* v. *Walker*, 379 Mass. 297, 397 N. E. 2d 1105 (1979); *Commonwealth* v. *Kelly*, 10 Mass. App. 847, 406 N. E. 2d 1327 (1980); *Commonwealth* v. *Brown*, 11 Mass. App. 283, 416 N. E. 2d 218 (1981). In my judgment it is a sound exercise of discretion for the Court to allow the various States to serve as laboratories in which the issue receives further study before it is addressed by this Court.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

These cases present a significant and recurring question of constitutional law: whether the State's use of peremptory challenges to exclude all potential Negro jurors because of their race violates a criminal defendant's right to an impartial jury drawn from a fair cross section of the community.

In No. 82–1381, after a first trial had resulted in a hung jury, an all-white jury convicted a Negro of first- and second-degree robbery of a white victim. The prosecutor exercised his peremptory challenges to exclude all seven Negroes and one Hispanic who had been drawn as prospective trial jurors. Asserting that the prosecutor's actions violated the Constitution, petitioner moved for a mistrial, or alternatively, for a hearing to examine the prosecutor's motives in exercising the challenges. These motions were denied. The New York Court of Appeals subsequently affirmed the conviction by a vote of four to three. 57 N. Y. 2d 542, 443 N. E. 2d 915 (1982). Both the trial court and the Court of Appeals relied heavily on *Swain* v. *Alabama*, 380 U. S. 202 (1965), in rejecting petitioner's constitutional argument.

In No. 82–5840 and in No. 82–5910, all-white juries convicted Negro defendants of murdering white victims. In No. 82–5840, the prosecutor employed his peremptory challenges to exclude all 14 potential Negro jurors. In No. 82–5910, following the removal of three Negroes for cause,

the prosecutor used his peremptory challenges to exclude every remaining Negro venireman. In both cases, counsel for petitioners unsuccessfully objected to the State's use of peremptory challenges to exclude all Negroes from the jury. The state appellate courts concluded that petitioners had merely shown that Negroes were excluded from the juries in their cases, not that the State had systematically excluded Negroes over a period of time. And in each case, respondents rely heavily upon *Swain* v. *Alabama, supra,* to defend the judgments below.

In *Swain*, a closely divided Court held that the prosecutor's use of peremptory challenges to strike Negroes from the jury panel in one particular case did not deny the defendant the equal protection of the laws. The majority reasoned: "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." *Id.,* at 222. The majority conceded that circumstances might arise where "the purposes of the peremptory challenge are being perverted." *Id.,* at 224. But the majority stated that an equal protection claim would assume "added significance" only where "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes . . . ." *Id.,* at 223.

In the nearly two decades since it was decided, *Swain* has been the subject of almost universal and often scathing criticism.[1] Since *every* defendant is entitled to equal protection

---

[1] See, *e. g.,* Martin, The Fifth Circuit and Jury Selection Cases: The Negro Defendant and His Peerless Jury, 4 Hous. L. Rev. 448 (1966); Note, The Supreme Court, 1964 Term, 79 Harv. L. Rev. 56, 135–139 (1965); Comment, *Swain* v. *Alabama:* A Constitutional Blueprint for the Perpetu-

of the laws and should therefore be free from the invidious discrimination of state officials, it is difficult to understand why several must suffer discrimination because of the prosecutor's use of peremptory challenges before any defendant can object.[2]  Moreover, *Swain* is inconsistent with the rule established in other jury selection cases that a prima facie violation is established by showing that an all-white jury was selected and that the selection process incorporated a mechanism susceptible to discriminatory application, irrespective of when in the selection process that opportunity arose.[3]  Finally, the standard of proof for discrimination in *Swain* imposes a nearly insurmountable burden on defendants.[4]  For

ation of the All-White Jury, 52 Va. L. Rev. 1157 (1966); Note, Fair Jury Selection Procedures, 75 Yale L. J. 322 (1965); Note, Peremptory Challenge—Systematic Exclusion of Prospective Jurors on the Basis of Race, 39 Miss. L. J. 157 (1967); Note, The Jury: A Reflection of the Prejudices of the Community, 20 Hastings L. J. 1417 (1969); Comment, A Case Study of the Peremptory Challenge: A Subtle Strike at Equal Protection and Due Process, 18 St. Louis U. L. J. 662 (1974); Comment, The Prosecutor's Exercise of the Peremptory Challenge to Exclude Nonwhite Jurors: A Valued Common Law Privilege in Conflict with the Equal Protection Clause, 46 U. Cin. L. Rev. 554 (1977); Recent Development, Racial Discrimination in Jury Selection, 41 Albany L. Rev. 623 (1977); Note, Limiting the Peremptory Challenge: Representation of Groups on Petit Juries, 86 Yale L. J. 1715 (1977).

[2] As one state court justice has written: "Is justice to sit supinely by and be flaunted in case after case before a remedy is available?  Is justice only obtainable after repeated injustices are demonstrated?  Is there any justification within the traditions of the Anglo-Saxon legal philosophy that permits the use of a presumption to hide the existence of an obvious fact?" *Commonwealth* v. *Martin*, 461 Pa. 289, 299, 336 A. 2d 290, 295 (1975) (Nix, J., dissenting).

[3] See, *e. g.*, *Alexander* v. *Louisiana*, 405 U. S. 625 (1972) (grand jury); *Whitus* v. *Georgia*, 385 U. S. 545 (1967) (petit jury); *Avery* v. *Georgia*, 345 U. S. 559 (1953) (petit jury).

[4] It is doubtful that many jurisdictions maintain comprehensive records of peremptory challenges, let alone information regarding the race of those individuals challenged.  Defendants attempting to demonstrate the kind of systematic exclusion required by *Swain* have virtually always failed, see J. Van Dyke, Jury Selection Procedures: Our Uncertain Commitment to

these reasons, some leading state courts have declined to follow *Swain* in interpreting state constitutional provisions. See *State* v. *Crespin*, 94 N. M. 486, 612 P. 2d 716 (App. 1980); *Commonwealth* v. *Soares*, 377 Mass. 461, 387 N. E. 2d 499, cert. denied, 444 U. S. 881 (1979); *People* v. *Wheeler*, 22 Cal. 3d 258, 583 P. 2d 748 (1978). Cf. *People* v. *Payne*, 106 Ill. App. 3d 1034, 436 N. E. 2d 1046 (1982).

I would grant certiorari to reexamine the standard set forth in *Swain*. In contrast to the defendant in *Swain*, petitioners have not relied upon the Equal Protection Clause in their challenge to the exclusion of potential Negro jurors. They rely instead on their Sixth Amendment right to be tried

---

Representative Panels 156, and nn. 83–98 (1977) (listing more than 50 cases); Annot., 79 A. L. R. 3d 14, 56–73 (1977) (collecting federal and state cases), despite proof that unmistakeably creates an inference of racial discrimination. See, *e. g.*, *United States* v. *Carter*, 528 F. 2d 844, 848, and n. 3 (CA8 1975) (evidence showing that prosecutors used peremptory challenges to exclude 81% of Negroes available to serve on petit jurors in 15 criminal cases tried during 1974, and that in 7 of the trials the prosecutor excluded all available Negroes, held insufficient to establish claim under *Swain*), cert. denied, 425 U. S. 961 (1976); *United States* v. *Nelson*, 529 F. 2d 40, 43 (CA8 1976) (faced once again with prosecutor utilizing peremptory challenges to remove all Negroes in case involving Negro defendant, court expresses "concern" but merely warns that in future district judges will take "appropriate action" in exercise of their supervisory powers); *United States* v. *Pearson*, 448 F. 2d 1207, 1213–1218 (CA5 1971) (prosecutor's notes showing race of defendants, number of Negroes on the jury panel, and number of Negroes challenged during one week of trials supported "reasonable conclusion" that Government challenged as many Negroes as possible when the defendant was a Negro, but did not suffice under *Swain*); *United States* v. *Robinson*, 421 F. Supp. 467 (Conn. 1976), vacated *sub nom. United States* v. *Newman*, 549 F. 2d 240 (CA2 1977); *State* v. *Simpson*, 326 So. 2d 54 (Fla. App. 1976) (reversing trial court's conclusion of systematic exclusion); *Ridley* v. *State*, 475 S. W. 2d 769 (Tex. Crim. App. 1972) (holding that *Swain* standard was not satisfied by evidence that prosecutor had used seven peremptory challenges to remove Negroes from the panel, by testimony from local attorneys as to prosecutor's sytematic use of peremptory challenges in cases involving Negro defendants and white victims, and by an assistant district attorney's admission that it was his practice to do so).

by an impartial jury drawn from a fair cross section of the community. *Swain* was decided before this Court held that the Sixth Amendment applies to the States through the Fourteenth Amendment, *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), and well before this Court identified the contours of that right in *Taylor* v. *Lousiana,* 419 U. S. 522 (1975). It should be reconsidered in light of Sixth Amendment principles established by our recent cases.

In *Taylor* v. *Louisiana,* this Court explained that "[t]he purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community." *Id.,* at 530. We noted that the effect of excluding " 'any large and identifiable segment of the community . . . is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable.' " *Id.,* at 532, n. 12, quoting *Peters* v. *Kiff,* 407 U. S. 493, 503 (1972) (opinion of MARSHALL, J.). Accordingly, we accepted the "fair-cross-section requirement as fundamental to the jury trial guaranteed by the Sixth Amendment," 419 U. S., at 530, and we specifically stated that "the exclusion of Negroes from jury service because of their race 'contravenes the very idea of a jury—"a body truly representative of the community" . . . .' " *Id.,* at 528 (quoting *Carter* v. *Jury Comm'n,* 396 U. S. 320, 330 (1970)).

The right to a jury drawn from a fair cross section of the community is rendered meaningless if the State is permitted to utilize several peremptory challenges to exclude all Negroes from the jury. This Court has consistently struck down methods of jury selection that produce racially biased jury venires.[5] The very purpose of refusing to tolerate ra-

[5] See *Peters* v. *Kiff,* 407 U. S. 493 (1972); *Sims* v. *Georgia,* 389 U. S. 404 (1967); *Jones* v. *Georgia,* 389 U. S. 24 (1967); *Whitus* v. *Georgia, supra; Coleman* v. *Alabama,* 377 U. S. 129 (1964); *Avery* v. *Georgia, supra; Patton* v. *Mississippi,* 332 U. S. 463 (1947); *Hale* v. *Kentucky,* 303 U. S. 613 (1938); *Hollins* v. *Oklahoma,* 295 U. S. 394 (1935); *Norris* v. *Alabama,* 294

cial discrimination in the composition of the venire is to prevent the State's systematic exclusion of any racial group from juries. The desired interaction of a cross section of the community does not take place within the venire; it is only effectuated by the jury that is selected and sworn to try the issues. The systematic exclusion of prospective jurors because of their race is therefore unconstitutional at any stage of the jury selection process. There is no point in taking elaborate steps to ensure that Negroes are included on venires simply so they can then be struck because of their race by a prosecutor's use of peremptory challenges. Yet, given the normal allowance of such challenges,[6] a prosecutor who wishes to exclude all Negroes can normally do so. The effect of excluding minorities goes beyond the individual defendant, for such exclusion produces "injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Ballard* v. *United States*, 329 U. S. 187, 195 (1946).[7]

The right to be tried by a jury representative of a cross section of the community does not mean that each jury must

---

U. S. 587 (1935); *Martin* v. *Texas*, 200 U. S. 316 (1906); *Neal* v. *Delaware*, 103 U. S. 370 (1881); *Strauder* v. *West Virginia*, 100 U. S. 303 (1880).

[6] For example, in the federal system the prosecutor is entitled to 20 peremptory challenges in capital cases, 6 peremptory challenges if the offense is punishable by imprisonment for more than one year, and 3 if the offense is punishable by imprisonment of not more than one year or by fine or both. Fed. Rule Crim. Proc. 24(b).

[7] Of course, the State has an interest in exercising its peremptory challenges as it wishes. But while the peremptory challenge may be an important right of an accused, *Pointer* v. *United States*, 151 U. S. 396, 408 (1894), there is nothing in the Constitution that requires peremptory challenges for either the accused or the State, *Stilson* v. *United States*, 250 U. S. 583, 586 (1919). When the representative cross-section requirement—"an essential component of the Sixth Amendment right to a jury trial," *Taylor* v. *Louisiana*, 419 U. S. 522, 528 (1975)—conflicts with what is at most a statutory right to exercise peremptory challenges, the latter must give way.

include constituents of every group in the population. The impracticality of such a formulation is obvious. But there is a serious question whether the right to an impartial jury permits the State to exclude members of a racial minority solely because of their race. When a prosecutor uses several peremptory challenges to exclude every potential Negro juror, there is strong circumstantial evidence that the exclusions are racially motivated and therefore in violation of the defendant's Sixth Amendment right. At the very least, a defendant should be able to state a cognizable claim without proof of absolute exclusion of every Negro in every case for several years, as required by *Swain.*

In California, for example, a defendant must make a timely objection and show from all the circumstances a strong likelihood that the prosecution is exercising its peremptory challenges because of race alone. If the trial judge finds a reasonable inference of exclusion based on race, the statutory provision that no reason need be given for a peremptory challenge gives way to the constitutional imperative and the prosecution must show some nonracial basis for the exercise of its challenges. The trial court then makes the ultimate determination as to whether the defendant has successfully demonstrated that the prosecution is using its peremptory challenges in a constitutionally impermissible manner. See *People* v. *Wheeler, supra.* Such a procedure is merely illustrative, but it appears to be quite workable. The California courts have indicated no difficulty in applying it. See, *e. g., People* v. *Johnson,* 22 Cal. 3d 296, 583 P. 2d 774 (1978); *People* v. *Allen,* 23 Cal. 3d 286, 590 P. 2d 30 (1979) (trial court errs in failing to require prosecution to demonstrate nonracial basis for exclusion); *People* v. *Rousseau,* 129 Cal. App. 3d 526, 179 Cal. Rptr. 892 (1982) (trial court correctly concluded that defendant failed to establish prima facie case); *People* v. *Fuller,* 136 Cal. App. 3d 403, 186 Cal. Rptr. 283 (1982).

Accordingly, I would grant certiorari to consider whether petitioners' Sixth Amendment rights, as applied to the States

through the Fourteenth Amendment, were violated by the prosecutors' use of peremptory challenges to exclude all Negroes from the juries in these three cases.[8] Sixth Amendment principles have evolved significantly since *Swain* was decided, and it is time to reexamine whether the rule announced in *Swain* under the Equal Protection Clause can be reconciled with the Sixth Amendment right of every defendant.[9]

---

[8] Because I continue to believe that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, I would in any event grant certiorari in No. 82–5910. In light of the special emphasis we have placed on providing an impartial jury in capital cases, see *Adams* v. *Texas*, 448 U. S. 38 (1980); *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968), review of the use of peremptory challenges in capital cases is particularly appropriate.

[9] As respondent in No. 82–1381, the State of New York has also requested that this Court grant the petition for writ of certiorari. The State concedes that the Court of Appeals' decision raises a significant and recurring question of law concerning race discrimination in the jury selection process. Brief for Respondent in Support of Petition 6–9. The State also notes the conflict among state-court decisions and contends that the conflict is likely to grow as a result of widespread litigation of this issue in numerous state courts. *Id.*, at 9–11.