**Michael McCRAY, Petitioner,**

v.

**Robert ABRAMS, Attorney General of the State of New York, Respondent.**

**No. 83 C 4406.**

United States District Court,
E.D. New York.

Dec. 19, 1983.

---

New York Civil Liberties Union, New York City (Steven R. Shapiro, New York City, of counsel), for petitioner.

Elizabeth Holtzman, Dist. Atty., Kings County, Brooklyn, N.Y. (Barbara D. Underwood, Asst. Dist. Atty., Brooklyn, of counsel), for respondent.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Michael McCray brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is black, claims that the prosecutor at his state court trial used her peremptory challenges in a racially discriminatory way and that his conviction by a jury so chosen violates his rights under the sixth and fourteenth amendments to the United States Constitution.

### I

Petitioner, whose sentence has been stayed by an order of this court pending the decision on his petition, was convicted of Robbery, First Degree and Robbery, Second Degree in the Supreme Court of the State of New York, Kings County, on April 28, 1980. This was petitioner's second trial, the first having ended in a mistrial when the jury was unable to agree on a verdict.

Allegedly, the vote at the first trial was nine to three in favor of conviction; according to the affidavit of petitioner's trial counsel, the three voting for acquittal were the only blacks on the jury.

It is undisputed that at the second trial the prosecutor used seven peremptory challenges against blacks, one against a Hispanic, and three against whites. Petitioner contends that the eight minority jurors thus challenged were the only ones on the jury panel and that the resulting jury was composed entirely of whites. Respondent asserts that the prosecutor may have challenged not three whites but four and that one black juror was selected as an alternate. The trial judge could not recall whether there were any black jurors. The record does not resolve these disputes; nor, as respondent's affidavit points out, does it reveal how many blacks or Hispanics were in the jury panel, how many defense counsel excluded by his own peremptory challenges, or how many either side excluded for cause.

In any event, defense counsel moved in the course of jury selection for a mistrial or in the alternative for a hearing to inquire into the prosecutor's use of her peremptory challenges. He accused the prosecutor of systematically excluding blacks and Hispanics from the jury, and noted that one of the blacks so excluded had stated during voir dire that a relative or close friend was a victim of a crime. According to the trial court's opinion denying these motions, *People v. McCray*, 104 Misc.2d 782, 429 N.Y. S.2d 158, 159 (N.Y.Sup.Ct., Kings Co.1980), the prosecutor denied excusing jurors on the ground of race. The trial court denied defendant's motion, on the same ground, to set aside the verdict, and the Appellate Division affirmed, 84 A.D.2d 769, 444 N.Y. S.2d 972, without opinion.

The New York Court of Appeals affirmed the conviction in a 4–3 decision, 57 N.Y.2d 542, 457 N.Y.S.2d 441, 443 N.Y.S.2d 915 (1982). That court relied upon *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) in rejecting petitioner's federal claims under the sixth and four-

teenth amendments and refused to construe the analogous provisions of New York's Constitution more expansively.

The Supreme Court denied McCray's petition for a writ of *certiorari* on May 31, 1983, *McCray v. New York*, —— U.S. ——, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). Justices Marshall and Brennan dissented in an opinion of Justice Marshall. *Id.* at 2439. Justices Stevens, Blackmun and Powell voted to deny *certiorari* but stated in an opinion of Justice Stevens that they did not disagree with Justice Marshall's appraisal of the "importance of the underlying issue—whether the Constitution prohibits the use of peremptory challenges to exclude members of a particular group from the jury, based on the prosecutor's assumption that they will be biased in favor of other members of the same group." *Id.* at 2438. However, they believed that "further consideration of the substantive and procedural ramifications of the problem by other courts" would enable the Supreme Court "to deal with the issue more wisely at a later date." *Id.* Justice Stevens' opinion noted that "there is presently no conflict of decision within the federal system" and that the problems of judicial review of peremptory challenges were being addressed by the courts of the two states whose supreme courts have held state constitutional rights to be violated by discriminatory use of peremptory challenges. *Id.* at 2439, citing *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978) and *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). The opinion concluded that "it is a sound exercise of discretion for the Court to allow the various States to serve as laboratories in which the issue receives further study before it is addressed by this Court." 103 S.Ct. at 2439.

Petitioner moved the New York Court of Appeals for reargument in light of the Supreme Court's disposition of his case. The court denied the motion without opinion on July 12, 1983. McCray then filed this petition for relief pursuant to 28 U.S.C. § 2254.

If *Swain v. Alabama, supra,* is good law, petitioner's argument fails. But both petitioner and respondent urge the court to reconsider that case and to conclude that the sixth and fourteenth amendments prohibit the use of peremptory challenges to exclude potential jurors solely on the basis of race. Respondent opposes granting the writ, however, on the ground that on the record in this case petitioner did not make a showing sufficient to warrant a mistrial or a hearing on his claim that the prosecutor's use of peremptory challenges was racially motivated.

It is unusual, to say the least, for a district court to reexamine a Supreme Court case squarely on point. Moreover, the expressed willingness of five Justices to reconsider the *Swain* decision was perhaps not intended to apply to a collateral attack on the very conviction the Court was addressing. But surely there is some invitation implicit in Justice Stevens' opinion for the lower courts to engage in such reconsideration, and that invitation was not restricted to the state courts, as is evidenced by the opinion's reference to the absence of a "conflict of decision within the federal system" as a reason for postponing the Supreme Court's consideration of the issue. In the light of that language and of the position of respondent, this court concludes that it should address itself to the merits of the *Swain* decision.

## II

The defendant in the *Swain* case was black and was convicted by an all-white jury. He contended that the historic underrepresentation of blacks on jury panels in the county and the prosecutor's use of peremptory challenges to eliminate the blacks who were on the panel in his case constituted racial discrimination in violation of the equal protection clause of the fourteenth amendment. While acknowledging the settled principle that total exclusion of blacks from jury panels, or token inclusion, is forbidden, the Court rejected the defendant's argument and suggested that sus-

pected group affinity was an acceptable basis for the use of peremptory challenges. The Court noted, without disapproval, that such challenges are "frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty." 380 U.S. at 220–21, 85 S.Ct. at 835–36.

The Court established a presumption "that the prosecutor is using the State's challenges to obtain a fair and impartial jury" so weighty that it could not be "overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes." "Any other result," the majority believed, "would establish a rule wholly at odds with the peremptory challenge system as we know it." *Id.* at 222, 85 S.Ct. at 836.

Essentially, the Court decided that the use of peremptory challenges could not be examined in any particular case without a statistical showing of repeated discriminatory use of such challenges in other cases in a locality. Only if "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes ... with the result that no Negroes ever serve on petit juries," *id.* at 223, 85 S.Ct. at 837, could a particular defendant make out a *prima facie* case of discrimination.

Petitioner concedes that he cannot satisfy the *Swain* test. Indeed, it is hard to see how he could do so even if blacks were systematically excluded by peremptory challenges from all juries in Kings County. Many *voir dires* are, like McCray's, not recorded, and the transcripts are not likely to reveal the race of prospective jurors anyway. The practices in Kings County are not unusual in this respect, and apparently there have been only two cases since the *Swain* case was decided in 1965 in which a defendant has successfully estab-

lished systematic exclusion. *U.S. v. Childress*, 715 F.2d 1313, 1316 (8th Cir.1983).

As noted by Justice Marshall, *McCray v. New York, supra*, 103 S.Ct. at 2440 (Marshall, J., dissenting), the *Swain* opinion has been thoroughly criticized, not least because it provides no remedy for the first victims of discrimination in a particular jurisdiction, no matter how plain the facts might be in the particular case. *See, e.g., United States v. Danzey*, 476 F.Supp. 1065 (E.D.N.Y.1979), *aff'd*, 620 F.2d 286 (2d Cir.), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).

Moreover, the coherence of the *Swain* opinion depends upon two assumptions whose validity has been at least diluted since 1965. The first is that no federally guaranteed right is implicated by the use of peremptory challenges based solely on presumed group affinity, even when the group in question is racial. Under this analysis, the Constitution prohibits a strategy of keeping blacks off juries entirely but is indifferent to a situation in which no blacks ever sit on juries in cases in which the defendant is black.

The Court's sixth amendment cases since 1965 announce principles inconsistent with this position. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), made the sixth amendment's jury trial provisions binding on the states for the first time. In *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S.Ct. 692, 696, 42 L.Ed.2d 690 (1975), the Court reviewed its major sixth amendment decisions and concluded that "[t]he unmistakable import of this Court's opinions, at least since 1940 ... is that the selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." The defendant in that case was male and successfully attacked a state law that prohibited women from jury service unless they had previously filed a written declaration of a desire to serve on a jury. The practical effect of this system was to exclude women almost totally from jury panels.

It is true that the *Taylor* decision, like those addressing the total exclusion of blacks from jury venires, speaks directly to the composition of the jury pool rather than to the ultimate composition of the jury in any particular case. Indeed, the Court specifically cautioned "that in holding that petit juries must be drawn from a source fairly representative of the community and reflect the various distinctive groups in the population we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Id.* at 538, 95 S.Ct. at 701.

■ While it is obvious that parties "are not entitled to a jury of any particular composition," *id.* (citations omitted), it is another thing to assert that the prosecutor in a case involving a black defendant may use peremptory challenges solely on the basis of an assumption of racial affinity in order to produce an all-white jury. The extreme version of such a proposition would be to find acceptable a practice of excluding blacks automatically from jury panels in cases involving black defendants.

The equal protection clause prohibits racial discrimination not only because race is almost always irrelevant but also because distinctions based on race are invidious. *See Loving v. Virginia,* 388 U.S. 1, 10, 87 S.Ct. 1817, 1822, 18 L.Ed.2d 1010 (1967) ("The clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." (citations omitted)); *see also Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (Brennan, J., concurring in the judgment in part and dissenting in part) ("[R]acial classifications that stigmatize ... are invalid without more." (citations omitted)). No compelling governmental purpose justifies a prosecutor's use of peremptory challenges solely on the basis of race.

But even if rights under only the sixth amendment were at stake, it seems plain that "[t]he right to a jury drawn from a fair cross-section of the community is rendered meaningless if the State is permitted to utilize several peremptory challenges to exclude all Negroes from the jury." *McCray v. New York, supra,* 103 S.Ct. at 2442 (Marshall, J., dissenting). To permit a prosecutor to remove jurors solely on the ground of race on the theory that members of one race have a potential affinity with the other members of that race is almost inevitably to allow the party identified with the majority to obtain a jury with affinity to that majority. He "can altogether eliminate the minority from the jury, while the defendant is powerless to exclude majority members since their number exceeds that of the peremptory challenges available." *Commonwealth v. Soares,* 377 Mass. 461, 487–88, 387 N.E.2d 499, 516 (1979), *cited with approval in People v. McCray,* 57 N.Y.2d 542, 457 N.Y.S.2d 441, 443 N.E.2d 915 (1982) (Meyer, J., dissenting).

The integrity of the *Swain* opinion's second critical assumption, that inquiry into a prosecutor's motives in a particular case "would establish a rule wholly at odds with the peremptory challenge system as we know it," 380 U.S. at 222, 85 S.Ct. at 836, has also been eroded by later developments. Two state supreme courts have in recent years articulated anti-discrimination rules under their own state constitutions and fashioned procedures to avoid turning all challenges into challenges for cause. *Commonwealth v. Soares,* 377 Mass. 461, 389 N.E.2d 499, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. Wheeler,* 22 Cal.3d 263, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *see also State v. Crespin,* 94 N.M. 486, 612 P.2d 716 (1980) (adopting the *Wheeler-Soares* test under the New Mexico Constitution but finding no systematic discrimination).

The *Wheeler* case decided that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community" under the California Constitution. 148 Cal.Rptr. at 903, 583 P.2d at 761–62. Similarly, the *Soares* opinion proscribed "exercise of peremptory

challenges to exclude members of discrete groups, solely on the basis of bias presumed to derive from that individual's membership in the group[,]" 387 N.E.2d at 516.

Both these decisions established a substantially similar procedural remedy. Under the *Wheeler* decision, the "presumption ... that a party exercising a peremptory challenge is doing so on a constitutionally permissible ground[,]" 148 Cal.Rptr. at 904, 583 P.2d at 762, may be rebutted by a *prima facie* showing of discrimination. This may be done by making as complete a record of the circumstances as feasible, establishing that the persons excluded are members of a "cognizable group" discrimination against which is prohibited, and by showing "from all the circumstances of the case ... a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." 148 Cal.Rptr. at 905, 583 P.2d at 764. The court indicated that, for example, "the party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of his peremptories against the group." *Id.*

Once a *prima facie* showing is established, the burden shifts to the other party to show that he exercised the challenges "on grounds that were reasonably relevant to the trial or its parties or witnesses[,]" *id.* 148 Cal.Rptr. at 906, 583 P.2d at 765, rather than on grounds of group bias alone. But "[t]he showing need not rise to the level of a challenge for cause." *Id.* If the court finds that the burden of justification is not sustained as to any of the questioned challenges, their presumptive validity is rebutted and the venire must be quashed. *Id.*

### III

■ This court concludes that the rule of the *Swain* case, which five members of the Supreme Court have invited the courts to reconsider, should be modified. The equal protection clause should be construed to prohibit a prosecutor's exercise of peremptory challenges to exclude blacks solely on the basis of race in any case. If, as petitioner here alleges, the prosecutor at his trial exercised peremptory challenges solely on the basis of race, his sixth and fourteenth amendment rights were violated. The court does not decide the application of this holding to exclusion on a basis other than race, to counsel's use of peremptory challenges in civil cases, or to other questions which the facts of this case do not present.

■ The procedure adopted by the California Supreme Court in the *Wheeler* case is sensible and a useful model in fashioning the appropriate remedy. Even if all the relatively minor factual uncertainties in the record are resolved in respondent's favor, the record still makes out a *prima facie* case of discrimination. McCray is black and the victim of the crime is white; at the time of the motion for a mistrial the prosecutor had exercised seven of her eleven peremptory challenges against blacks; one of those so challenged had even stated on *voir dire* that a close friend or relative had been a victim of a crime. The trial court should have required the prosecutor to offer some reason other than race alone for each of these challenges. The trial judge should then have determined whether any of the challenges were in fact based on race alone; if they were, the court should have quashed the venire.

The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is granted unless petitioner is afforded a new trial within 60 days. So ordered. Execution of the sentence is stayed for a period of fifteen days from the entry of the order to enable petitioner to apply to the Court of Appeals for a further stay.