LEIGH M. CLARK, Retired Circuit Judge.
A jury found each of these three appellants guilty on a consolidated trial of said defendants-appellants on an indictment against each of said named defendants that charged in pertinent part that said defendant, naming him, did knowingly obtain unauthorized control over U.S. currency and checks, the property of Vicco Oil Company of the value of an amount in excess of $1,000.00, with the intent to deprive the owner of said property in violation of Section 13A-8-3 of the Code of Alabama, which by subsection (c) of said Code section is classified as a Class B felony, and which by Section 13A-5-6(a)(2) is punishable by imprisonment for “not more than 20 years or less than 2 years.” It having been shown at a sentencing hearing after due notice that each of the defendants was a recidivist with three or more previous felony convictions, each was sentenced to imprisonment for life.
The first witness for the State was Thomas E. Hixon, who testified that he “had been running the Vicco Service Station” for approximately 19 years and was present there on December 31, 1982, on the occasion of the alleged theft. He identified the three defendants, in part as follows:
“I was about to leave the station to go to the bank with the money bag in my hand when I noticed my wife was real busy and I turned around and walked back and three colored boys followed me in and my counter, I’ve got an old register sitting here and underneath the counter is open where I keep cigarettes. I merely pitched the bag up under the counter. They said they wanted some cigarettes. They got the cigarettes.”
Mr. Hixon further testified that he was in the process of leaving the service station to go to the bank, as the motor vehicle in which the three defendants were riding was being serviced and then as they were driving away in the motor vehicle; that he heard his daughter say, “Mother, one of them stooped down and got something out from under the counter”; and that his wife came out screaming and hollering, “We’ve been robbed.” The witness then testified that he then ran and jumped in his pickup and “taken out down the highway, but, by the time I could get in the truck, they was a couple blocks down the highway,” so he returned to the service station.
Deputy Sheriff John R. Steels, of Tuscaloosa County, testified as a witness for the State that he was on duty that day and that while on duty he received a message from the Tuscaloosa sheriff’s office describing *102 the motor vehicle in which the three defendants were riding and advising him to be on the lookout for it, and advising him that they were to be apprehended for the theft at the Vicco Oil Company. He said that he saw a motor vehicle approaching from the direction of Pickens County that was similar to the vehicle that had been described to him as the one containing the persons who had left from the Vicco Oil Company, and that he stopped the vehicle and its three occupants at approximately 1:00 or 1:30 and that the three defendants were in the automobile. We quote from his testimony as follows:
“Q. Are you certain that — this (indicating) is Mr. Means you pointed out. Are you certain he was driving?
“A. Yes, he was.
“Q. You don’t know where the tall fellow was sitting; do you?
“A. I can’t recall.
“Q. You said, I believe, you don’t know where this other fellow, Mr. Dorsey, was sitting?
“A. No, I don’t.
“Q. What happened when you stopped the car, Officer?
“A. I stopped the car and the driver got out and he asked me what was the problem. I told him the problem.
“Q. What did you say to him?
“A. I told him that a car answering his description was reported to us that it was involved in a robbery or whatever from our S.O. and I shook them down searched them down.
[[Image here]]
“Q. What did you find, if anything, on the individuals?
“A. I didn’t find no weapons. The subject here with the beige and crimson had $45.00 on him.
“Q. Can you talk a little louder?
“A. The subject here, Mr. Means I think, the subject here, he had $45.00 on him. The other subject, Jackson, he had $45.00 on him. The other subject had small amount of change on him. The subjects stood there. I kept them there where I could watch them for a while. Then Sergeant Lake dispatched and said he was bringing Sheriff Coleman over with some people to identify them or whatever and see whether they were the subjects that took the money over here. Meanwhile, they was out, so I searched them again, placed them in the patrol car.
“Q. You searched all three of them again?
“A. Absolutely.
“Q. And, placed them in your car?
“A. Yes, sir.
“Q. And what part of the car did you place them?
“A. I put them in the back seat, all three of them.
“Q. Were they restrained in any way, handcuffed?
“A. No.
[[Image here]]
“Q. Now, all the money that you found, you didn’t find anything else on the individuals?
“A. No, I didn’t. No more than just personal like maybe cigarette lighters and stuff like that.
“Q. You found — did you say—
“A. $445.00.
“Q. On Mr. Means?
“A. Right.
“Q. $45.00 on Mr. Jackson?
“A. Yes, sir.
“Q. Now, did I understand you to say that Sheriff Coleman came over there?
“A. Yes, he did.
“Q. How long after you stopped and searched them and placed them in the vehicle was it before Sheriff Coleman got there?
“A. I’d say 45 minutes to an hour, in that bracket.
“Q. Now, after Sheriff Coleman got there, what did you do then?
“A. Sergeant Lake he took over the suspects and Sheriff Coleman said that he had some people he wanted to look at the people and we got them out and he looked at them and the lady identified them, you know.
*103 “Q. And, this was, you say, between one and one thirty in the afternoon when you first stopped them?
“A. Yes.
“Q. And, then what happened to the fellows after that?
“A. It was turned over to Sheriff Coleman.
“Q. And, what did you do with the personal effects and money that you found?
“A. I turned them over to Sheriff Coleman.”
There was no contention on the trial and no contention on appeal by any one of the three defendants-appellants that he was not one of the three men who were in the automobile that came to the Yicco service station on December 31, 1982, and no denial that one of them while inside the office of the service station stole the money and checks described in the indictment against each of the defendants and which soon thereafter were found in an automobile in which they had been riding. None of the defendants was a witness on the trial of the case. Each appellant is represented on appeal by at least one lawyer who represented the defendant at trial, and each appellant’s counsel has filed a brief in which he argues that his client’s conviction and sentence should be reversed and the case remanded. However, it should be observed that there is a lack of uniformity as to all of the issues presented in the three separate briefs of counsel for appellants. Nevertheless, there is some conformity in all three briefs as to two issues presented, which issues we shall now discuss under an appropriate caption.
THE FIRST OF THE TWO ISSUES PRESENTED BY ALL THREE APPELLANTS
In the brief of counsel for each appellant are the following two issues, although they are stated somewhat differently in said briefs. One of said two issues is to the effect that the appellant was denied his constitutional right to a fair trial by reason of the claimed insufficiency of the transcript presented by the court reporter to protect the appellant’s constitutional right to a fair trial or to a fair appeal.
Although this particular contention is not emphasized to the same extent by the briefs on appeal by attorneys for the three appellants, it seems that the contention of each appellant is addressed to the apparent failure of the court reporter to report the opening argument of counsel for the State in the cases and each urges that as a result thereof the appellants are unable to show on appeal that their objections to the closing argument of State’s counsel, overruled by the trial judge, were well taken and should have been sustained by the trial court. Reliance is based upon opinions by courts of the United States, including United States v. Upshaw, 448 F.2d 1218 (5th Cir.1971), cert. denied, Upshaw v. United States, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1971). Although the language of the three briefs of counsel for appellants are not entirely uniform as to the proposition now under consideration, we believe that the following quotation from the brief of one of said counsel represents fairly the view stated in all of said briefs:
“Even though this Court is no longer required to search the record for error in cases other than death penalty review, it is still apparent that when an error occurs that is so flagrant and prejudicial to a Defendant’s rights, this Court is called upon to act. However, when the entire argument is not presented for review, the Court does not have the full and complete record from which to review the case. Had the Appellant been financially able to have an entire transcript provided, he would have done so; however, when the State ordered a free transcript, a complete transcript was not included. A reconstruction of the record is not a viable substitute for an accurate and verbatim transcript.”
Without agreeing with appellants as to the last sentence quoted above, for the reason that we think that an effort could have probably been successfully made at trial court by each of the defendants to have shown and have reported by the court reporter the content of the opening argument *104 of the State to the jury to which the argument of counsel for defendant was purported to be a reply, to have been shown in the court reporter’s transcript of the trial so as to have protected the appellants as to this particular issue now under consideration. Furthermore, it is to be noted that, as counsel for appellee observe in their briefs herein, the opinions of the courts of the United States on the subject that we have cited above rely upon a federal statute governing trial courts of the United States as found in 28 U.S.C.A. § 753(b)(1) providing that the court reporter shall report “all proceedings in criminal cases had in open court.”
We decide the first issue presented by all appellants adversely to said appellants.
THE REMAINING ISSUE THAT ALL THE APPELLANTS RAISE
It is next contended by all the appellants in the briefs of their respective counsel that their constitutional rights were violated by the application of the jury selection process as set forth by Rule 15.4(h), Ala. Temp.R.Crim.P., as follows:
“ADDITIONAL JURORS. If two (2) or more persons are being tried jointly, to the minimum number of names otherwise required for striking there shall be twelve (12) additional names for each additional defendant; provided, there shall then also be added so many more names as may be necessary to allow all defendants an equal number of strikes. The district attorney shall strike first, and shall strike one (1) name from the list; then one (1) defendant shall strike one (1) name from the list; then the district attorney shall strike one (1) more name from the list; and then the next defendant shall strike one (1) name from the list. The defendants shall each have a turn in the same order as the filing of the charges against them; or if they were charged in the same instrument, then in the order in which their respective charges appear therein; unless they agree upon a different order. The parties shall continue to strike off names alternately, first the state, then one defendant, in this fashion until only twelve (12) names remain on the list, and the twelve (12) persons thus selected shall be the jury charged with the trial of the defendants.”
Although this issue is raised by attorneys for all three appellants in their briefs, said attorneys do not give the same reason in support of this issue. It seems to be contended in brief of counsel for at least one of the appellants that Rule 15.4(b) is unconstitutional, which contention was determined adversely to appellant in an opinion by Presiding Judge Bowen in Holsemback v. State, 443 So.2d 1371, 1377 (Ala.Cr.App.), cert. denied, Ala., Jan. 20, 1984, wherein it is stated:
“A law changing the number of jury strikes in a criminal case is procedural and does not affect matters of substance. Haynes v. State, 424 So.2d 669, 670-672 (Ala.Cr.App.1982), cited as proper authority in Ex Parte Cofer, 440 So.2d 1121 (Ala.1983). See also Opinion of the Justices No. 229, 342 So.2d 361, 362 (Ala.1977), holding that the ‘method of selecting juries in criminal cases, ... is within the rulemaking power of the Supreme Court of Alabama as granted by the Constitutional provision quoted (Amendment 328, Section 6.11).’ ”
In the brief of the attorneys for at least one of the appellants, the contention is made that the method of striking that took place was unconstitutional as applied to there particular appellants by reason of the fact that they were black. We quote from the brief of the attorney of one of the appellants as follows:
“In the case at hand the venire consisted of 51 prospective jurors, giving the State 18 strikes. The Defendants in this case are black. The State had 18 excuses, and each Defendant had 7 excuses. The Defendants objected to the striking method because at the end of the jury selection process, all of the blacks were excused by the State. Your Appellant submits that the scheme to automatically excuse blacks is impossible to prove in an individual case, but no experienced trial lawyer could deny the existence of such a *105 scheme on the part of the State in this particular case.
“Your Appellant submits that the U.S. Supreme Court has advised the various State courts in McCray v. New York [461 U.S. 961], 103 S.Ct. 2438 [77 L.Ed.2d 1322] (1983), that the substantive and procedural ramifications of this problem should be dealt with by them. In Roberts v. Maryland, cert. denied [469 U.S. 1027], 105 S.Ct. 446 [83 L.Ed.2d 372] (1984), Judge Marshall in his dissent says, ‘To reconsider Swain, both from courts and scholars, continues unabated. It is time for this Court to face up to the issue.’ Your Appellant adopts by reference the dissents in McCray and Roberts and states to the Court that under these circumstances a substantive right of your Appellant has been abridged by the use of the jury striking method set out in Section 12-16-101, Code of Alabama, 1975, to strike a jury.”
It is not for us to follow the views of dissenting Justices of the Supreme Court of the United States. Consequently, we decline to follow that which counsel for the appellant quotes from the opinion of Justice Brennan in quoting from what Justice Brennan and Justice Marshall stated above as quoted in brief of counsel for appellant.
The writer had proceeded to complete his proposed opinion in this case by holding that all of the issues presented by the appellants should be determined adversely to appellants, when his attention was called by Presiding Judge Bowen to the very recent cases of Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which the Supreme Court of Kentucky had affirmed judgments of the trial court but which affirmances were reversed by the Supreme Court of the United States in majority opinions in criminal cases in which the prosecutor, the State of Kentucky, had used peremptory challenges of prospective jurors to strike prospective black jurors, in cases where the defendants, as they all were in the instant case, were black people. The cited cases that were on certiorari to the United States Supreme Court from the Supreme Court of Kentucky are to the effect that, upon the prosecution’s use of peremptory challenges to strike members of the defendant’s race from the jury ve-nire, the burden then shifted to the prosecution to come forward with a neutral explanation for those challenges.
In the cases now before us, there are similarities, as we have heretofore observed, with the cited cases of the United States Supreme Court of Griffith v. Kentucky and Batson v. Kentucky, but constitutional questions decided by the Supreme Court of the United States are not the same as in the cases sub judice, for in these cases the appellants had been tried at a consolidated trial as to which consolidation there was no objection in the record by any of the three defendants. There is no contention by any of said defendants-appellants that the consolidation was injurious to him in any respect other than as to the elimination of all prospective black jurors from the jury that tried the defendants-appellants, which conceivably would not have occurred if the cases had not been consolidated without any objection thereto on the part of the defendants. After obtaining whatever benefits they thought they would have had by a consolidated trial, they cannot properly complain of what resulted therefrom, namely, a jury with no black jurors thereon.
We find against all contentions made by any of the appellants that there was error prejudicial to any of them, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of the Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
TAYLOR and PATTERSON, JJ., concur.
TYSON, J., concurs in result.
*106 BOWEN, P.J., dissents, with opinion.
McMILLAN, J., joins in dissent.