STATE of Minnesota, Respondent,

v.

Keith Wayne LOWMASTER, Appellant.

No. C3–86–1480.

Court of Appeals of Minnesota.

May 19, 1987.

Review Denied June 25, 1987.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Thomas J. Keyes, Beltrami Co. Atty., Bemidji, for respondent.

C. Paul Jones, Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Keith Lowmaster was convicted of assault in the second degree, Minn. Stat. § 609.222 (1984), for assaulting his wife with an ax. On appeal, he claims the prosecutor unfairly used a peremptory challenge on a Native American Indian venireperson, that the court erred in ruling that his prior convictions were admissible for impeachment purposes, that the evidence was insufficient to prove he did not act in self-defense and that the court erred in imposing the presumptive guidelines sentence. We affirm.

## FACTS

Appellant returned home on Saturday, August 31, 1985, at approximately 5:00 p.m. after a two night absence. His wife Rose was very upset with him and suspected that he was seeing another woman. Two friends who had spent the day with Rose were at the house when appellant returned. When appellant arrived, he walked up to the back door. He had been drinking. Rose yelled at him and told him to stay out, but appellant pushed the door open and entered. Rose continued to yell and began pushing appellant against the kitchen counter. She hit him several times but appellant just smiled. Rose noticed several hickeys on appellant's neck and became very angry. She accused him of infidellity and pulled down his pants.

While Rose called the police, appellant went into the living room, removed a ceremonial dancing ax from the wall and began swinging it around. Rose testified that appellant had swung an ax at her in the past. She grabbed a knife. Rose jabbed at appellant with the knife from a distance of four to five feet away. He swung the ax and hit her in the arm.

At trial, appellant did not testify but claimed self-defense through the testimony of Rose and the two friends who were visiting her at the time of the incident. Appellant was convicted of assault in the second degree and sentenced to 60 months imprisonment. This appeal followed the denial of post-trial motions.

## ISSUES

1. Did the trial court err in determining that the prosecutor did not discriminate in using a peremptory challenge to strike a Native American Indian venireperson from the jury panel?

2. Did the trial court abuse its discretion in ruling that appellant's prior convictions were admissible for impeachment purposes?

3. Does the evidence support the jury's verdict that appellant did not act in self-defense and that he was guilty of assault?

4. Did the trial court abuse its discretion in imposing the presumptive guidelines sentence on appellant?

## ANALYSIS

### I

In his motion for a new trial appellant claimed that the prosecutor was guilty of discrimination in using a peremptory challenge to strike the only Native American Indian venireperson from the jury panel. In *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a case decided one week before this trial, the United States Supreme Court announced a new test for determining whether there has been purposeful discriminatory selection of the venire based on the prosecutor's exercise of peremptory challenges:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." * * * Finally, the

defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. * * * But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. * * * Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." [citation omitted] If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal

Protection Clause "would be but a vain and illusory requirement." [citation omitted] The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.,* at ——, 106 S.Ct. at 1723–24 (citations omitted) (footnotes omitted).

■ Here, the venireperson was struck because of the prosecutor's belief that her occupational training as a home-health aid would make her more sympathetic to appellant's claim of self-defense. The trial court, after reviewing *Batson* and hearing the arguments of counsel on the issue, concluded that there was no "systematic exclusion of persons of Indian race or any inappropriate exclusions" in the jury selection. While it is not entirely clear that the trial court applied the "purposeful discrimination" standard of *Batson,* from our review it appears that the prosecutor articulated a neutral explanation related to the case. We conclude that appellant did not establish purposeful discrimination.

**II**

■ In pretrial proceedings the trial court ruled that appellant could be impeached by prior felony convictions for arson and unauthorized use of a motor vehicle. Under the factors set out in *State v. Jones,* 271 N.W.2d 534 (Minn.1978) we find no abuse of discretion. *See State v. Graham,* 371 N.W.2d 204, 208–09 (Minn.1985).

**III**

■ The record supports the jury's verdict. The State proved that appellant did not act in self-defense when he assaulted his wife with an ax. Appellant retrieved the ax while his wife was on the telephone. He swung it around before she grabbed a knife. The jury could have determined that appellant was the aggressor, that he made no effort to retreat or to avoid the danger. Further, the jury could easily have concluded that appellant used more

force than was necessary in defending himself from his wife's assaults with the knife.

## IV

■ Based on a severity level VI offense and a criminal history of 6, appellant was sentenced to 60 months imprisonment. Ordinarily, a reviewing court will not interfere with a presumptive guidelines sentence and reverse a refusal to depart only in rare cases. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). Only a rare case would warrant reversal of a refusal to depart. *Id.* This is not that rare case. We find no abuse of discretion in the trial court's refusal to depart.

## DECISION

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

Because I would remand the case for further attention of the trial court, I respectfully dissent. On the question of an unconstitutionally discriminatory exercise of a peremptory challenge, the trial court should be required to carefully consider the standards articulated in *Batson v. Kentucy*, —— U.S. ——, ——, 106 S.Ct. 1712, 1723–24, 90 L.Ed.2d 69 (1986).

### 1. The law.

The purposeful denial of participation of a juror on account of race violates the Equal Protection Clause. *Id.*, at ——, 106 S.Ct. at 1716 (quoting *Swain v. Alabama*, 380 U.S. 202, 203–04, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965)).

According to the Supreme Court:
[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that [racial minority] jurors as a group will be unable impartially to consider the State's case against a [defendant of the same race].
*Id.*, —— U.S. at ——, 106 S.Ct. at 1719.

Until *Batson* was decided, the law of the case was governed by *Swain*. There the court held:

[T]he defendant must, to pose the [equal protection] issue, show the prosecutor's systematic use of peremptory challenges against [members of a race] over a period of time.
*Swain*, 380 U.S. at 227, 85 S.Ct. at 839.

Reviewing applications by lower courts of *Swain*, the *Batson* court found that this rule of law "placed on defendants a crippling burden of proof," and the court rejected the rule as inconsistent with standards for assessing a prima facie case under the Equal Protection Clause. *Batson*, —— U.S. at ——, 106 S.Ct. at 1720–21. The court observed:

For evidentiary requirements to dictate that "several must suffer discrimination" before one could object, *McCray v. New York*, 461 U.S. [961] at 965, 103 S.Ct. [2438] at 2440 [77 L.Ed.2d 1322 (1983)] (MARSHALL, J., dissenting from denial of certiorari), would be inconsistent with the promise of equal protection to all.
*Id.*, at ——, 106 S.Ct. at 1722 (footnote omitted). Thus, the court held:

[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.
*Id.*, at ——, 106 S.Ct. at 1722–23.

The Supreme Court proceeded in *Batson* to outline the requirements for determining whether discrimination has occurred in a particular case. First, the trial court must determine whether the defendant has established a prima facie case of discrimination. In examining this question, the court must recognize that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.*, at ——, 106 S.Ct. at 1723 (citation omitted). Second, once a prima facie showing has occurred, the court must determine whether the State has met its burden of showing a neutral explanation for challenging racial minority persons. Neither the prosecution's denial of discrimination nor its affirmation of good faith will substitute for articulation of a "neutral explanation relat-

ed to the particular case." *Id.*, at ——, 106 S.Ct. at 1723.

### 2. The evidence.

The record demonstrates the defendant and the challenged juror were Native Americans. The juror was challenged despite the absence of any questioning of the juror by the prosecutor. The State makes no claim that it acted on the basis of information elicited by defense counsel in his examination of prospective jurors. Doris Carlson was stricken in the State's exercise of its first peremptory challenge. She was the only Native American among 22 prospective jurors. The same prosecutor struck the same prospective juror in the exercise of his first peremptory challenge in a trial earlier in the same term that involved an accusation against another Native American defendant.

The prosecutor gave three explanations for his peremptory challenge of Doris Carlson. First, he denied excluding a prospective juror on account of race. Second, he observed that the prospective juror lived in a small town about 10 miles from another small town where the defendant used to live, that the "two towns were rather close-knit," and that he was concerned that the prospective juror knew the defendant even though she did not respond to the trial court's call for a showing of hands on those who were familiar with the defendant. Third, the prosecutor noted that the prospective juror was a home health aide. The prosecutor commented:

> Someone being in the health care industry, of course, would have some knowledge of injuries inflicted on persons, and where the defense in this case was essentially jury nullification claim or urging the jury to essentially nullify the law based upon the lack of any severe injury to the victim which may have had more of an impact on Ms. Carlson because of her being involved in the home health industry.

### 3. The trial court holding.

The trial court indicated that it had examined the *Batson* decision. However, the court held it "did not find that there has been any systematic exclusion of Indian persons from the trial of this case." In a similar reference to the *Swain* rule of law, the prosecutor argued that the defendant had failed to show a "persistent pattern of striking Indians from juries," and that there had been "no pattern of systematic exclusion of Indian jurors in Indian cases."

### 4. Analysis.

We can decide, alternatively, to affirm the trial court's holding as an informed response to the standard enunciated in *Batson*, or to remand as a minimum recognition of the need for a careful and deliberate trial court decision on the issue. I agree that we should not reverse for a new trial, because the decision on discrimination is fundamentally one to be made by the trial judge. *Id.*, at —— n. 21, 106 S.Ct. at 1723–24, 1724 n. 21.

Why should we remand?

First, although *Batson* respects the exercise of discretion by the trial court, it does not lend support for the notion that the trial judge can make an unexplained decision. Rather, the Supreme Court in *Batson* enunciates specific standards for decisionmaking, evidently anticipating that those standards will be employed. Where the trial court fails to indicate it has used the standards, an affirmance of its decision on appeal renders the *Batson* standards meaningless.

We have no reason to believe here that the trial court fully appreciated the significance of the *Batson* decision. The case was discussed, and the defense attorney properly stated its meaning. The trial court took a few minutes to briefly examine the opinion. Nevertheless, the prosecutor's arguments and the comments of the trial court, including its ultimate holding, suggest a failure to appreciate the significance of *Batson* as a departure from the rule of law stated in *Swain*. The trial court stated it found no "systematic exclusion" of Indian persons, using language borrowed from *Swain*, not *Batson*. Although the trial court spoke of systematic exclusion "in this case," there is no indication that it applied the *Batson* criteria for determining whether a defendant has established a prima facie case and whether

the State has "come forward with a neutral explanation" for its peremptory challenge. *Id.*, at ——, 106 S.Ct. at 1723. It is significant in this regard that *Batson* was applied retroactively to the case decided there, where the trial court had acted under principles of law determined by *Swain;* the Supreme Court remanded the case for a trial court determination consistent with the decision in the case. *Id.*, at ——, 106 S.Ct. at 1725.

Second, the record does not support a conclusion, independent of any assessment of the evidence by the trial court, that discrimination did not occur. The record would permit us to affirm a trial court decision that there was a prima facie showing of discrimination. A juror was summarily stricken under circumstances begging for some explanation. If our analysis turns to the question of the prosecutor's explanation, it is even more evident that the record would support a finding of discrimination. The prosecutor stated he simply did not believe the prospective juror did not know the defendant; the only basis for his disbelief, however, was that the prospective juror lived in a small town ten miles from a town where the defendant used to live.

More importantly, the primary explanation of the prosecutor, relating to the vocation of the prospective juror and her possible views regarding the victim's injury, has little significance in light of the fact that the defendant was charged with assault with a dangerous weapon, an offense that required no special attention to the victim's injury. Indeed, the prosecutor's comment that appellant's asserted defense "was essentially jury nullification" incorrectly states appellant's claim, which was that he injured the victim in self-defense. On cross-examination of the victim, defense counsel made no attempt to minimize the severity of her injury, and the undisputed evidence showed the victim was struck with a weapon and suffered a significant gash in the flesh of her arm.

Finally, it is especially important that the appellate courts demand highly particularized findings on the issue of discrimination in the exercise of peremptory challenges. As indicated by Justice Marshall, concurring in *Batson,* the chance of avoiding discrimination in these circumstances is slight, even when the case is governed by *Batson.* Justice Marshall observed:

> Prosecutors are left free to discriminate against [racial minorities] in jury selection provided that they hold that discrimination to an "acceptable" level.

*Id.*, at ——, 106 S.Ct. at 1728 (Marshall, J., concurring). In addition, Justice Marshall stated:

> Any prosecutor can easily assert facially neutral reasons for striking a juror, and trial courts are ill-equipped to second-guess those reasons.

*Id.*

The appellate courts in Minnesota have become increasingly alert to the need to require particularized findings and statements of reasons in cases involving exercise of the broad discretion of the trial court. This posture of the appellate courts serves to enhance application of the rule of law in the exercise of discretion, and it facilitates meaningful appellate review. *See State v. Williams,* 279 Minn. 152, 154, 155 N.W.2d 739, 740 (1968). The practice of stating reasons for a decision also enhances respect of litigants for the fairness of proceedings governed by the exercise of discretion.