**Carlos DIAZ and Toribio Cintron, Petitioners-Appellants,**

v.

**Charles SCULLY and Robert Abrams, Respondents-Appellees.**

Nos. 982, 1012, Dockets 86–2310, 86–2311.

United States Court of Appeals, Second Circuit.

Submitted April 6, 1987.
Decided June 16, 1987.

Richard B. Lind, New York City, for petitioner-appellant Diaz.

David L. Lewis, New York City (Lewis & Fiore, New York City, of counsel), for petitioner-appellant Cintron.

Robert Abrams, Atty. Gen. of the State of New York, New York City (O. Peter Sherwood, Sol. Gen., Judith A. Gordon, Adina Kling, Asst. Attys. Gen., New York City, of counsel), for respondents-appellees.

Before OAKES, KEARSE, and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioners Carlos Diaz and Toribio Cintron, New York State prisoners, appeal from judgments of the United States District Court for the Southern District of New York, Vincent L. Broderick, *Judge,* dismissing their petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). The petitions alleged (1) that cer-

tain jury instructions at petitioners' joint state-court trial relieved the state of its constitutional burden of establishing their guilt beyond a reasonable doubt, and (2) that the prosecution's use of peremptory challenges to remove Black venirepersons from the jury before which they were tried violated their rights under the Sixth and Fourteenth Amendments to the Constitution. The district court ruled (1) that the challenged instructions, read in context, did not lessen the burden on the prosecution, and (2) that the authorities invoked by petitioners in support of their charge of discriminatory use of peremptory challenges, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*"Batson"*), and *McCray v. Abrams*, 750 F.2d 1113 (2d Cir.1984) (*"McCray"*), *vacated and remanded*, — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), *appeal dismissed*, No. 84–2026 (2d Cir. Oct. 23, 1986), could not be applied to petitioners retroactively. On appeal, Diaz contends that the challenged instruction was unfair even when read in context, and that the district court's ruling on the retroactivity of *Batson* has been undercut by more recent Supreme Court authority. Cintron contends principally that *McCray* should have been applied retroactively. Finding no merit in any of petitioners' contentions, we affirm.

## I. BACKGROUND

Diaz, Cintron, and one Anibal Caballero were indicted in July 1977 for robbery and kidnaping. After a first joint trial on these charges ended in a hung jury, the defendants were tried again and were found guilty. Before they were sentenced, Diaz and Cintron moved to set aside the verdicts on the ground that the state had used its peremptory challenges systematically to exclude Black venirepersons from the jury. The trial court denied the motions and sentenced Diaz and Cintron to indeterminate terms of imprisonment of fifteen years to life on the kidnaping count and up to seven years on the robbery count, to be served concurrently.

Diaz and Cintron appealed their judgments of conviction to the Appellate Division, which affirmed without opinion in June 1982. The New York Court of Appeals denied leave to appeal in July 1982.

In 1985, each petitioner filed his present habeas petition in the district court pursuant to 28 U.S.C. § 2254 (1982). They contended that the trial court's charge on aiding and abetting had denied them due process and that the prosecution had used its peremptory challenges discriminatorily in violation of their rights under the Sixth Amendment and the Equal Protection Clause.

In July 1986, in an opinion reported at 641 F.Supp. 1037, the district court denied both petitions. The court rejected the challenge to the trial court's aiding-and-abetting instruction on the ground that, taken in light of both the charge as a whole and the other instructions on aiding and abetting, the challenged passage did not constitute error, or at most was an error that was harmless beyond a reasonable doubt. With respect to the contentions that the state's allegedly discriminatory use of its peremptory challenges violated petitioners' constitutional rights, the court noted that petitioners' convictions had become final in 1982. The court did not reach the merits of these contentions, ruling that the pertinent authorities, *Batson* and *McCray*, decided in 1986 and 1984, respectively, could not be applied to petitioners retroactively. *See* 641 F.Supp. at 1044–46 (citing, *inter alia*, *Allen v. Hardy*, — U.S. —, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam) (holding *Batson* nonretroactive on collateral review of convictions that had become final before *Batson* was announced)).

Judgments were entered dismissing the petitions, and these appeals followed.

## II. DISCUSSION

On appeal, Diaz (1) pursues his attack on the trial court's aiding-and-abetting charge, and (2) contends that the district court's ruling that *Batson* may not be applied retroactively in light of *Allen v. Hardy* is erroneous in light of the Supreme Court's more recent decision in *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Cintron contends that

the district court erred in not applying *McCray* retroactively. We reject the challenge to the trial court's aiding-and-abetting charge substantially for the reasons stated by Judge Broderick, *see* 641 F.Supp. at 1039–41, and we confine our discussion to the contentions that *Batson* and *McCray* should have been applied retroactively.

## A. Batson

■ As the district court recognized, the Supreme Court in *Allen v. Hardy* held that its 1986 decision in *Batson* was not to be given retroactive effect on collateral review of convictions that had become final before *Batson* was announced. 106 S.Ct. 2881. Final, in the context of retroactivity analysis, means that a judgment of conviction has been entered, the time for direct appeals from that judgment has expired, and the time to petition the United States Supreme Court for certiorari has expired. *Id.* at 2880 n. 1; *Linkletter v. Walker*, 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965).

■ The convictions of Diaz and Cintron became final in 1982. Under *Allen*, therefore, *Batson* could not be applied to them.

The Supreme Court's more recent decision in *Griffith v. Kentucky*, 107 S.Ct. 708, does not alter the holding of *Allen*. In *Griffith*, the Court modified one facet of its retroactivity principles, but did so only with respect to convictions that had not become final prior to the Court's announcement of a new rule of criminal procedure. Thus, *Griffith* has no applicability to the *Batson* arguments of these petitioners.

## B. McCray

■ It is well established that a state prisoner seeking federal habeas review of a conviction that has become final prior to the Supreme Court's announcement of a new constitutional rule of criminal procedure may have the new rule applied to his case only when the benefits of applying it retroactively may be expected to outweigh the costs. This cost-benefit inquiry, which is equally applicable to a circuit court decision that establishes a new constitutional rule of criminal procedure, *see Roman v.*

*Abrams*, 822 F.2d 214, 227 (2d Cir.1987); *White v. Maggio*, 556 F.2d 1352, 1355 (5th Cir.1977), requires consideration of three factors:

> " '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' "

*Allen v. Hardy*, 106 S.Ct. at 2880 (quoting *Solem v. Stumes*, 465 U.S. 638, 643, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) (quoting *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967))).

■ With respect to the first factor, retroactivity is most appropriate where the purpose of the new principle is to enhance the accuracy of criminal trials. *See Allen v. Hardy*, 106 S.Ct. at 2880; *Solem v. Stumes*, 465 U.S. at 643, 104 S.Ct. at 1341. To weigh in favor of retroactivity, the rule's impact on the truthfinding function of the trial must be "fundamental." *See Allen v. Hardy*, 106 S.Ct. at 2881; *Solem v. Stumes*, 465 U.S. at 645, 104 S.Ct. at 1342. The second factor, the reliance of law enforcement authorities on the old standards, requires us to look "primarily to whether law enforcement authorities and state courts have justifiably relied on a prior rule of law said to be different from that announced by the decision whose retroactivity is at issue." *Solem v. Stumes*, 465 U.S. at 645–46, 104 S.Ct. at 1343. The third factor, the effect on the administration of justice, focuses on the ease or difficulty that courts would encounter in determining, perhaps many years after the convictions were obtained, whether or not the proceedings were adequate to meet the new standard, and on the likelihood that inadequacies in the old procedures would require new trials " 'hampered by problems of lost evidence, faulty memory, and missing witnesses.' " *Allen v. Hardy*, 106 S.Ct. at 2881 (quoting *Solem v. Stumes*, 465 U.S. at 650, 104 S.Ct. at 1345).

In *Allen v. Hardy*, the Court explored each of these factors in the context of its

recent decision in *Batson*, which had held, pro tanto overruling *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), that a defendant could establish a violation of his right to equal protection on the basis of the prosecutor's discriminatory use of peremptory challenges in the defendant's own case, without the need for proof of a consistent prior history of the discriminatory practice. The *Allen* Court found that each of the three factors militated against the retroactive application of *Batson*.

First, it found that though the easing of a defendant's burden of proving discriminatory use of peremptory challenges might have some bearing on the truthfinding function of a criminal trial, it vindicated other interests as well; the Court also found that other procedures had long existed to protect a defendant against the seating of jurors who were biased. Second, the Court found that prosecutors and judges throughout the state and federal systems had relied for two decades on *Swain*, many of them explicitly. Third, it found a likelihood that, because of the past reliance on *Swain*, most prosecutors would not have kept the kind of records necessary to permit an adequate rebuttal of a defendant's prima facie case of discrimination in the use of peremptory challenges, with the result that many convictions would be vacated, necessitating many retrials made difficult due to the passage of time. Thus, the *Allen* Court concluded that *Batson* would not be applied retroactively on collateral review of decisions that were final prior to *Batson*.

■ Though *Batson* was decided under the Equal Protection Clause and *McCray* was decided under the Sixth Amendment, the same practice was at issue in both cases and we see no principled basis, in light of *Allen*, on which to conclude that *McCray* may be applied retroactively on collateral review of decisions that were final prior to *McCray*. As to the first retroactivity factor, *i.e.*, the purpose of the new standard, the vindication of the Sixth Amendment's provision for a fair trial implicates several interests other than truth-

finding; these include preservation of the possibility that all cognizable groups in the community will participate in the administration of justice and preservation of the appearance of fairness. *See Roman v. Abrams*, at 227–28.

As to the reliance factor, *McCray* differs from *Batson* to an extent, in that *McCray* did not overrule an existing decision regarding the application of the Sixth Amendment to the prosecutor's use of peremptory challenges. Nonetheless, no federal court, other than the district court whose decision was reviewed in *McCray*, *see* 576 F.Supp. 1244 (E.D.N.Y.1983), had previously ruled that a state's use of its peremptories could be challenged under the Sixth Amendment, and, as the *Allen* Court noted, there had been extensive reliance by prosecutors and the courts on the proposition established by *Swain*, *i.e.*, that such a challenge under the Equal Protection Clause would be entertained only if the defendant could show the prosecutor's consistently discriminatory use of peremptory challenges in case after case. While *Swain* was not intended to authorize the discriminatory use of peremptory challenges, it did have the effect of establishing a presumption that the prosecutor's use of peremptories in any given case was valid. The perceived immunity from challenge undoubtedly had the effect of lessening, if not eliminating, the prosecutor's incentive to maintain records as to his reasons for exercising—or not exercising—a peremptory challenge with respect to each venireperson.

The likely dearth of records also highlights the disruption of the administration of justice that would likely result if any new rule exposing the prosecutor's use of peremptory challenges to case-by-case scrutiny were made retroactive. The difference between *McCray's* Sixth Amendment analysis and *Batson's* equal protection analysis is no basis for believing that the state would have any greater means of rebutting a defendant's prima facie case of discriminatory use of peremptories, or that, once a conviction is vacated, the state would have any greater facility in reassembling the proof needed for a new trial. In

158

short, the effect of applying *McCray* retroactively would doubtless be no less disruptive to the administration of justice than would have been the retroactive application of *Batson.*

Since the convictions of Diaz and Cintron had become final before the decision in *McCray* was announced, we conclude that the district court properly held that the *McCray* ruling could not be applied to these petitioners.

## CONCLUSION

We have considered all of petitioners' arguments on appeal and have found them to be without merit. The judgments of the district court are in all respects affirmed.