**UNITED STATES of America,**

v.

**Ronald J. HENDRON, Jehmin Lah, Stan Kinman, Zbigniew Grabowski, "a/k/a Mr. Bischek," Heiko Luikenga, Rajmund Szwonder, Jan Gorecki, Wojciech Baranski, Jerzy Brzostek, and Jerzy Napiorkowski, Defendants.**

**No. CR 92–424.**

United States District Court, E.D. New York.

May 17, 1993.

---

See also 813 F.Supp. 973.

Mary Jo White, U.S. Atty. (Tanya Y. Hill, Peter Norling, Asst. U.S. Attys. of counsel), Brooklyn, NY, for U.S.

Freeman, Nooter & Ginsberg, (Lee Ginsberg, of counsel) New York City, for defendant Grabowski.

Thomas Cahill, P.C., New York City, for defendant Szwonder.

Harold Pokel, New York City, for defendant Gorecki.

Alan Drezin, New York City, for defendant Baranski.

Grossman, Lavine & Rinaldo (Stewart Grossman, of counsel), New York City, for defendant Brzostek.

Philip Katowitz, New York City, for defendant Napiorkowski.

Rogers & Wells (Thomas J. Lilly, of counsel), New York City, for Andrzej Krajewski.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The court has before it a motion to quash a subpoena served by one of the ten defendants, Wojciech Baranski, on Andrzej Krajewski, a reporter employed by the Television Information Agency, the news division of Polish television.

The superseding indictment contains ten counts, the first of which charges that the ten defendants, citizens of the United States, Poland, Korea, and the Republic of Germany, in violation of 18 U.S.C. § 371, conspired knowingly (a) to import into and export out of the United States automatic assault rifles, grenade launchers, missiles, and fighter planes, without obtaining written approval of the United States Department of State, in violation of the Arms Export Control Act, 22 U.S.C. § 2778, (the Act), (b) to conduct a financial transaction involving criminal violation of the Act, in violation of 18 U.S.C. § 1956, (c) to export ammunition to the government of Iraq, in violation of 50 U.S.C. §§ 1702 and 1705, and (d) to make false statements in a matter within the jurisdiction of the United States, in violation of 18 U.S.C. § 1001.

The other nine counts charge all or some of the defendants with criminal acts in furtherance of the conspiracy.

The subpoena seeks production of what the attorney for Baranski says are audio tape recordings of interviews by Krajewski of defendant Ronald J. Hendron, who in September 1992 pleaded guilty to conspiracy, importing arms, and illegal financial transactions.

In support of the motion to quash Krajewski says that at the Metropolitan Correctional Center he interviewed Hendron, who knew Krajewski was a reporter for the Polish press and would use the interviews for news reports, and that portions of the tape recordings were incorporated (with voice-over translations) in reports broadcast in Poland and rebroadcast in New York on channel 25 in Brooklyn. A written version of Krajewski's report appeared on February 6, 1993 in *Nowy Dziennik*, a Polish daily newspaper published in New York.

Attached to Baranski's brief is a translation of that version. In substance, it states the following.

Hendron said that "the possibility of two lifetime sentences forced him to cooperate with the prosecutor's office." Customs agents (presumably undercover) engaged Hendron to cooperate in the trading of weapons to Iraq under the pretext of delivering them to Kurds and Shiites as humanitarian aid. Hendron did not learn until about half a year after talks started in 1991 that the weapons were supposed to go to Iraq and would not be used as humanitarian aid.

Hendron listened to 255 tapes of his conversations with the agents. But one of those tapes, mentioning humanitarian aid, "was gone," having been "erased".

Hendron confirmed that the Poles from the Polish firm A.T.X., which the indictment says trades in munitions, had nothing to do with delivering guns to New York. Hendron said that the Poles have no chance of winning at trial and that he would testify they knew where the weapons would end up.

At the request of the court the attorneys for Krajewski furnished to the court and to the attorneys for the government and the defendants copies, with English translations, of scripts of radio broadcasts made by Krajewski and another news story published March 8, 1993, in *Nowy Dziennik*. These copies add further details to what Hendron told Krajewski.

Rule 17(c) of the Federal Rules of Criminal Procedure provides for the issuance of a subpoena commanding production of documents or other objects. The rule also provides that the court may "quash or modify" the subpoena if compliance would be "unreasonable or oppressive" and may direct production before the court of the documents or objects prior to trial or prior to the time "when they are to be offered in evidence."

Baranski says that the tapes contain material that can be used to impeach Hendron when he appears as a government witness "if he changes his story."

■  Under the law in this circuit there is some form of limited newsgathering privilege. To defeat it the material sought must be highly material and relevant, critical to the maintenance of the claim, and not obtainable from other available sources. *United States v. Burke,* 700 F.2d 70, 77 (2d Cir.), cert. denied, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983).

■  The *Burke* case was a prosecution of James Burke for conspiracy to commit sports bribery and to violate the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. §§ 1961 *et seq.* Prior to trial the District Court quashed a subpoena addressed to Time, Inc. seeking production of tapes and documents relating to its reporter's interviews with the notorious Henry Hill, the chief witness in the prosecution of the equally notorious Burke. Hill was named as author and collaborator with the reporter in an article published by Sports Illustrated purporting to describe the scheme in which Burke was involved.

The District Court quashed the subpoena, and the Court of Appeals affirmed, stating that Burke had not made the requisite showing that the materials sought, while relevant as possibly contradicting Hill's testimony at

trial, were critical to the maintenance of the defense.

Baranski urges this court not to follow this decision, which he says "runs directly afoul" of the Supreme Court's decision in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

It would be heroically presumptuous to decline to accept the teaching of the Court of Appeals. *Cf. McCray v. Abrams*, 576 F.Supp. 1244 (E.D.N.Y.1983) (anticipating a change in Supreme Court doctrine), *aff'd in part, vacated in part*, 750 F.2d 1113 (2d Cir.1984), *vacated*, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986). This court therefore follows the holding of the *Burke* opinion and evaluates and balances the legitimate competing interests of the reporter's claim to First Amendment protection and the defendant's claim to a fair trial guaranteed by the Sixth Amendment. 700 F.2d at 76–77.

■ It is true that the *Burke* opinion of the Court of Appeals recites that the purpose of the "settled" rule in the circuit was to protect "the important interests of reporters and the public in preserving the confidentiality of journalists' sources." 700 F.2d at 76 (citations omitted). While Hill was the journalist's source, the reporter did not hold his name in confidence. Indeed, Hill was the purported author of the published article, and much of the material sought by the subpoena must have consisted of his statements to the reporter.

The Court of Appeals did not discuss the fact that Hill was in no sense a "confidential source", but sustained the order because Burke had failed to make a clear and specific showing that the material was necessary and critical in impeaching Hill at the trial. 700 F.2d at 77. The decision thus recognized that the reporter had First Amendment interests beyond those of preserving the confidentiality of his source or of his information.

In *United States v. LaRouche Campaign*, 841 F.2d 1176, 1181–82 (1st Cir.1988), Judge Coffin described and found some merit to the four such interests advanced in that case, (1) the threat of administrative and judicial intrusion into the newsgathering process, (2) the disadvantage of a journalist appearing to be and being used as the investigative arm or research tool of the judicial system or of one of the parties, (3) the disincentive to compile and preserve unpublished material, and (4) the burden on journalists' time and resources in responding to subpoenas. The court said, among other things:

> We discern a lurking and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other unused information, even if nonconfidential, becomes routine and casually, if not cavalierly, compelled. To the extent that compelled disclosure becomes commonplace, it seems likely indeed that internal policies of destruction of materials may be devised and choices as to subject matter made, which could be keyed to avoiding disclosure requests or compliance therewith rather than to the basic function of providing news and comment. *Id.*

The material that Krajewski made public and available to the defendants has, according to the attorney for Baranski, shown that Hendron told Krajewski that the Polish defendants are not guilty of the charges made in three of the substantive counts in the indictment. Defense counsel says also that much of the material submitted casts serious doubt on the participation of those defendants in the criminal activities charged in the conspiracy.

No doubt the 3500 material that the government is required to produce may form a further basis for defense counsel to try to impeach Hendron's testimony.

Up to now Baranski has failed to make the clear and specific showing that the balance of the papers and tapes, beyond those that have already or will be made public, are necessary or critical to the maintenance of the defense. Baranski seeks the materials to impeach Hendron "if he changes his story." As yet Hendron has not told a story at trial.

The court quashes the subpoena but will allow Baranski to renew his application after Hendron has testified.

So ordered.